BLEICHER, Appellant and Cross–Appellee,

v.

UNIVERSITY OF CINCINNATI COLLEGE OF MEDICINE,
Appellee and Cross–Appellant.

[Cite as *Bleicher v. Univ. of Cincinnati College
of Med.* (1992), 78 Ohio App.3d 302.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–866.

Decided Feb. 13, 1992.

*Emens, Hurd, Kegler & Ritter, Roger P. Sugarman* and *Timothy T. Tullis,* for appellant and cross-appellee.

*Lee Fisher,* Attorney General, and Michael Gleespen, Assistant Attorney General, for appellee and cross-appellant.

BOWMAN, Judge.

In August 1984, appellant, Raymond Robert Bleicher, was dismissed from the University of Cincinnati College of Medicine ("the college") for poor scholarship. In 1986, after college review of his dismissal failed to result in his readmission, appellant initiated a breach of contract action against the college in the Court of Claims, seeking both reinstatement and monetary damages.

After a trial, the Court of Claims rejected appellant's argument that the college had failed to abide by its own educational guidelines, thus breaching its contract with appellant. Appellant now appeals to this court, raising three assignments of error:

"I. The Court of Claims erred in holding that defendant did not breach its academic contract with plaintiff.

"II. The Court of Claims erred in holding that defendant did not violate its Academic Performance Standards/Guidelines in its dismissal of plaintiff from medical school.

"III. The Court of Claims erred in holding that it did not have jurisdiction to decide plaintiff's claims for damages arising under the Constitutions of the State of Ohio and the United States."

The college has filed one assignment of error on cross-appeal:

"The trial court improperly excluded the trial deposition of Dr. Joseph Mansen."

Appellant's cause arises out of his having earned a failing grade in pharmacology, one of the required courses for graduation from the college. In 1982, appellant, then midway through his first year of medical school, requested and was granted permission to participate in the college's Individual Advancement Program ("IAP"), a plan allowing him up to three calendar years to complete his first and second year medical school curriculum. By participating in the IAP, appellant was required to complete the first two years of medical school curriculum by August 1984.

During the spring quarter of 1984, appellant was a student in pharmacology when personal problems interfered with his scholastic performance. Appellant informed his pharmacology professor, Dr. Ronald Millard, of the situation and sought an excused absence from the final examination with an opportunity to take a make-up examination. He was told a make-up examination was not possible because the final was a "shelf examination" for which no make-up examination was available. Appellant was permitted, however, to substitute his raw score from the pharmacology subsection of the National Board of Medical Examiners ("NBME") examination, to be taken in June 1984, for the final examination in the course, although the parties dispute whether appellant or the college suggested this option and whether the college represented the use of the NBME score as appellant's sole alternative for obtaining a final grade in the course.

Appellant was also aware of a remedial pharmacology course offered during the summer of 1984 for students who failed the spring semester pharmacology course. Appellant knew that the NBME scores would not be released until midsummer, and that he could take the remedial course as a back-up in the event that his NBME pharmacology score was insufficient to allow him to pass the course. Nevertheless, appellant did not enroll in the remedial course.

Appellant received his NBME scores in July 1984. Appellant's score on the pharmacology subsection was fifty-seven percent, which, combined with the

other grades earned during the course, did not result in a passing grade. Appellant thus failed pharmacology.

Appellant sought to remedy his failure by sitting for the final examination in the summer remedial course, even though he had not enrolled in nor attended that class. Appellant was informed that he could pass pharmacology only if he took and passed both the midterm and the final examination for the remedial course within the three hours allotted other students for the final examination. During the examination, the instructor apparently gave all students, including appellant, an extra hour. Appellant received a fifty-five percent score on the two examinations, which was less than the sixty percent required to pass the remedial course. Thus, appellant failed the remedial course.

In August 1984, appellant's three years for successfully completing the first two years of medical school curriculum expired and, since he had failed pharmacology, appellant was dismissed from the college.

Appellant's third assignment of error regards the jurisdiction of the Court of Claims and will be addressed first.

Appellant argues that the trial court erred in dismissing his constitutional claims, both because Section 1983, Title 42, U.S.Code provides a cause of action against a private individual who, under color of state law, deprives another of a constitutional right, and because a private party can be held directly liable in damages for violating constitutional rights. For authority, appellant relies upon R.C. 2743.02(A)(1), which provides that the state's liability in the Court of Claims is to be determined " * * * in accordance with the same rules of law applicable to suits between private parties * * *." Appellant urges that, because he raised his constitutional claims under Section 1983, Title 42, U.S.Code, and directly under the Ohio and United States Constitutions, the claims were the proper subject of an action in the Court of Claims.

This court has consistently held that constitutional and Section 1983, Title 42, U.S.Code claims are not actionable in the Court of Claims. See, *e.g., Burkey v. S. Ohio Correctional Facility* (1988), 38 Ohio App.3d 170, 171, 528 N.E.2d 607, 608; *Thompson v. S. State Community College* (June 15, 1989), Franklin App. No. 89AP-114, unreported, 1989 WL 65450. In *Thompson,* the plaintiff sued Southern State for failing to rehire him as a teacher. The Court of Claims granted summary judgment in favor of Southern State on the basis that plaintiff was part-time faculty, hired on a quarterly basis, and had no reasonable expectation of continued employment. On appeal to this court, plaintiff argued that Southern State had refused to rehire him for political reasons, thus denying his constitutional rights. This court rejected the

allegation that the plaintiff's constitutional claims should have been entertained by the Court of Claims, since " * * * a plaintiff in the Court of Claims is limited to causes of action which he could pursue if defendant were a private party. * * * " *Thompson, supra,* at 3, citing *McCord v. Div. of Parks & Recreation* (1978), 54 Ohio St.2d 72, 8 O.O.3d 77, 375 N.E.2d 50. Thus, this court concluded, at 3:

" * * * Since the alleged constitutional violations herein require an element of state action, plaintiff's constitutional claims present no viable cause of action to be heard in the Court of Claims. Rather, just as a private party, absent a statute to the contrary, may refuse to hire a faculty member under the circumstances presented herein, so defendant, insofar as the jurisdiction of the Court of Claims is concerned, likewise may refuse to hire or rehire plaintiff."

 Similarly, in the case now before us, the college's authority to dismiss appellant did not derive from its status as a state institution but, rather, was a power of the college *qua* college. Appellant was therefore limited in the Court of Claims to causes of action he could pursue against a private party, such as breach of contract. As appellant fails to present compelling reasons why these facts merit a change in our position that the Court of Claims lacks jurisdiction over constitutional and Section 1983, Title 42, U.S.Code claims, his third assignment of error is not well taken.

Appellant's second assignment of error, alleging that the trial court erred in failing to determine that appellant's dismissal from the college was an arbitrary and capricious action violating his right to due process and equal protection, is also rejected. Similar to the case in *Thompson,* appellant's due process and equal protection claims require state action, and are constitutional claims. Since, in the Court of Claims, appellant was limited to a cause of action which he could have pursued against a private citizen, that court did not err in determining that it lacked jurisdiction over these constitutional claims.

Appellant correctly cites *Morin v. Cleveland Metro. Gen. Hosp. School of Nursing* (1986), 34 Ohio App.3d 19, 516 N.E.2d 1257, for the concept that a university may not arbitrarily dismiss a student without due process of law. However, neither *Morin,* a Cuyahoga County Court of Appeals case, nor its authority, *Kister v. Ohio Bd. of Regents* (S.D.Ohio 1973), 365 F.Supp. 27, affirmed (1974), 414 U.S. 1117, 94 S.Ct. 855, 38 L.Ed.2d 747, involved appeals from the Ohio Court of Claims. As a result, the jurisdictional questions arising herein were not present under those facts. Appellant's second assignment of error is overruled.

■ Appellant's first assignment of error is based upon his assertion that the college breached its contract with him, and essentially argues that the trial court's decision was against the manifest weight of the evidence.

■ It is axiomatic that "* * * when a student enrolls in a college or university, pays his or her tuition and fees, and attends such school, the resulting relationship may reasonably be construed as being contractual in nature." *Behrend v. State* (1977), 55 Ohio App.2d 135, 139, 9 O.O.3d 280, 282, 379 N.E.2d 617, 620. In addressing the issue of whether such contract has been breached, the trier of fact appropriately looks to the terms of the contract as found in the college guidelines supplied to students. See *Embrey v. Central State Univ.* (Oct. 8, 1991), Franklin App. No. 90AP-1302, unreported, 1991 WL 224228, citing *Smith v. Ohio State Univ.* (1990), 53 Ohio Misc.2d 11, 13, 557 N.E.2d 857, 859-860. However, where the contract permits, the parties may alter its terms by mutual agreement, and any additional terms will supersede the original terms to the extent the two are contradictory. *Ottery v. Bland* (1987), 42 Ohio App.3d 85, 87, 536 N.E.2d 651, 654-655. In interpreting the contract, the trial court was required to "* * * attempt to harmonize all the provisions rather than produce conflict in them. * * *" *Ottery, supra,* at 87, 536 N.E.2d at 654, citing *Farmers Natl. Bank v. Delaware Ins. Co.* (1911), 83 Ohio St. 309, 94 N.E. 834.

■ In addition to these considerations, the trial court was required to defer to academic decisions of the college unless it perceived "* * * such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment. * * *" *Regents of the Univ. of Mich. v. Ewing* (1985), 474 U.S. 214, 225, 106 S.Ct. 507, 513, 88 L.Ed.2d 523, 532. The standard of review is not merely whether the court would have decided the matter differently but, rather, whether the faculty action was arbitrary and capricious. See *Bd. of Curators of Univ. of Mo. v. Horowitz* (1978), 435 U.S. 78, 91, 98 S.Ct. 948, 955-56, 55 L.Ed.2d 124, 135-136.

In the matter before us, the trial court determined that the college did not breach its contract with appellant by allowing him to count the pharmacology portion of the NBME examination as his final examination in the course because appellant agreed to the use of the NBME score. In addition, the court found that appellant failed to prove the college had violated its own guidelines by requiring appellant to take both midterm and final examinations for the remedial course in the same four-hour period. Finally, while the trial court concluded that it might have acted differently, it could not say that the

college had acted arbitrarily or capriciously in only allowing appellant four hours to complete two examinations.

■ Appellant first argues that the trial court's conclusion that appellant agreed to the use of the NBME score in place of his final examination for the pharmacology course was inconsistent with the court's findings of fact on this issue. Indeed, the trial court concluded that appellant " * * * had no option other than to substitute the NBME pharmacology subsection in place of his final pharmacology examination * * *[,]" which does appear to conflict with the court's conclusion that " * * * plaintiff agreed to the use of the pharmacology component of the NMBE [sic], and he can now hardly complain that he was permitted to use such exam that he elected not to take." Inasmuch as the trial court's conclusion was facially inconsistent with its finding of fact, the trial court erred.

Nevertheless, appellant has failed to demonstrate how this error resulted in prejudice to him, since the trial court's decision indicates that this issue was not dispositive. The more pertinent question addressed by the trial court for purposes of determining the breach-of-contract claim was whether the use of the NBME score violated the college guidelines. Section V(E)(3) of the college's Academic Performance Standards and Guidelines provides that the "[p]assing of an NBME Part I or II subtest in the same subject as that requiring remediation cannot be counted or substituted for passage of any part or an entire course. * * * " However, Section V(A)(3) states that "[w]hile a department may have available various options for remediation, it reserves the right to identify the method of remediation required for each student on an individual basis. * * * " The trial court found, based upon the evidence, that substitution of the NBME score for the final examination grade did not violate college guidelines, presumably because appellant and his professor had entered into an agreement which altered the terms of the original contract, something the college had reserved the right to permit.

■ As a reviewing court, we must give a presumption of correctness to the finding of the trial court, since that court is " * * * best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. * * * " *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 411–412, 461 N.E.2d 1273, 1276. Whether or not it found appellant was given other options, the trial court could reasonably have found from the evidence that appellant and the college agreed to substitute the NBME score for the final examination, thus, by agreement, overriding the provision in the guidelines and altering the terms of the contract.

■ Appellant next argues that the college violated its guidelines by allowing him less time than other students for completing both the midterm and final examinations in the remedial course. Specifically, appellant points to Section V(E)(1) of the guidelines, which states, in part:

"The standards used to evaluate a student's performance when remediating a course shall not differ from the standards applied to evaluate student performance in the class as a whole when the course was offered in the academic year immediately preceding the remediation. * * * "

The trial court considered the fact that other students in the course had four hours to answer one hundred twenty-five questions, while appellant had four hours to answer two hundred questions. The court stated, with regard to this issue:

" * * * This court might or might not have given plaintiff extra time to complete the midterm exam, but it cannot find that defendant was arbitrary or capricious. While the court was informed that essay questions were included in plaintiff's exams that were held on August 10, 1984, the court has no idea from the evidence that granting plaintiff three hours (and later adding an additional hour) to correctly answer sixty percent of 200 questions was unfair. Further, the standard to be applied is not one of fairness, but rather whether the conduct was arbitrary and capricious."

In determining this issue, we note that appellant's taking of the remedial examinations cannot be viewed as simply another opportunity to earn a grade for the spring semester pharmacology course, since appellant had completed the spring semester course by using his NBME pharmacology subtest score as his final examination grade. He therefore had already failed pharmacology. As a result, appellant's remaining option was to successfully complete the remedial course. Since appellant did not enroll in that class at the beginning of the summer semester, he was not automatically entitled to take the course examination. Nor would it have been appropriate for the college to simply allow him to take the final examination, since appellant had completed and failed the spring semester course, and since other students in the remedial course were required to have taken the midterm examination. The college was not required to give appellant unlimited opportunities to obtain a passing grade in pharmacology, nor would it have been equitable to require appellant to only take the final examination and not the midterm examination as other remedial students were required to do. We therefore agree with the trial court that it was not arbitrary or capricious for the college to require appellant to take both the midterm and final examinations in that course.

Nor do we find that the trial court erred in finding the college had not acted arbitrarily or capriciously in allowing appellant four hours to take both examinations. In this area, the court deferred to the judgment of the college that such was not unreasonable, particularly since the instructor of the remedial course was not required to allow appellant, who had not been a student in the class, to take any examination at all. Despite his personal problems, appellant had had some months to learn pharmacology, not only during the spring semester course but also in preparation for the NBME and in preparation for the remedial examinations. We thus agree with the trial court that appellant failed to produce sufficient evidence of arbitrary or capricious conduct on the part of the college in allowing him four hours to complete the remedial examinations.

Appellant further maintains that the proper review procedures were not utilized by the college prior to his dismissal, and that the trial court erred in failing to address this issue. Appellant directs our attention to Millard's testimony that the issue of whether the college had adhered to the academic guidelines could not be decided by the Sophomore Promotion Board but should be considered by the Academic Appeals Board. Appellant then points to testimony by the Chairman of the Academic Appeals Board that the issue was the province of the Sophomore Promotion Board. Appellant thus urges that the Court of Claims erred in failing to focus upon his assertion that neither board had considered whether the college's guidelines had been followed in dismissing appellant.

Minutes of the Sophomore Promotion Board indicate that appellant appeared before the board, submitting a written statement explaining his poor performance in pharmacology and objecting to the time allotted him to complete the remedial examinations. The committee " * * * concluded that the mechanics of the examinations are not the major issue * * * " but, rather, that it was more concerned with indications that appellant had " * * * great difficulty in making appropriate judgments, handling the responsibilities of a medical student, and lacking the critical body of knowledge needed for the clinical years. * * * " The Academic Appeals Board considered appellant's application for readmission to the college and, like the Sophomore Promotion Board, focused upon appellant's general performance and potential for future success as both a medical student and as a physician. With regard to appellant's arguments regarding the remedial pharmacology examinations, the committee stated that:

"The Committee discussed at length the problem that Mr. Bleicher was required to take both the mid and final exams for a summer pharmacology

course in a single three hour session scheduled in August 1984. The examiner informed all the students that they would have only three hours. However, without forewarning, the examiner allowed an additional hour for all students, including Mr. Bleicher. Whether this was a disadvantage for Mr. Bleicher is not clear. The fact did not deter the Committee from the conclusion that Mr. Bleicher's overall performance was far below acceptable."

Regardless of whether the two boards reviewing appellant's academic performance specifically considered the issue of the alleged violation of academic guidelines, appellant did raise the issue before the Court of Claims, which determined that no violation occurred. Appellant argued before the trial court and reasserts here that the alleged failure of the boards to consider the issue of the adherence to academic guidelines constituted evidence of arbitrary and capricious conduct on the part of the college in dismissing him from medical school. While the boards could have expressly referred to the academic guidelines, evidence in the record nevertheless indicates that the boards were aware of such guidelines and gave full consideration to appellant's objections to the testing procedures. Therefore the trial court did not err in failing to address the lack of overt reference during the boards' proceedings to the alleged violations of the academic guidelines.

Appellant cites *Maitland v. Wayne State Univ. Med. School* (1977), 76 Mich.App. 631, 257 N.W.2d 195, for its holding that a medical school review committee acted arbitrarily and capriciously in failing to adequately investigate the possibility that testing flaws had detrimentally affected a plaintiff student's grade. We reject any persuasive value that case may have since the decision in *Maitland* relied upon facts unique to that case. In addition, the Michigan appeals court clearly indicated it was deferring to the trial court's findings of fact in rendering its affirmation. *Maitland, supra*, at 635, 257 N.W.2d at 199.

Appellant finally argues that his dismissal was arbitrarily and capriciously based upon differences he had with Dr. Norma Wagoner, the Assistant Dean for Student Affairs, who, he alleges, sought retaliation against him for his public criticism of her handling of an administrative matter. Neither the trial court's findings of fact nor its conclusions of law addressed this issue. We find no evidence in the record, beyond appellant's own allegations, that Wagoner held any personal animosity toward appellant, or that any decision she may have made regarding his remediation of his pharmacology grade or his dismissal from the college were motivated by malice or ill will. The trial court did not err in failing to address appellant's claim of retaliatory conduct by Wagoner.

Although the trial court found the college did not present appellant with alternatives to the use of his NBME subpart score in place of his spring semester pharmacology final examination, based upon the totality of the evidence, including the fact that appellant received an additional opportunity to obtain a passing grade in the course by taking the midterm and final examinations for a summer remedial course in which he was not enrolled, the court concluded that appellant's dismissal was not arbitrary or capricious. The trial court properly found that the manifest weight of the evidence supported its conclusion that the academic contract between appellant and the college had not been breached. Appellant's first assignment of error is therefore overruled.

On cross-appeal, the college argues that the trial court should have admitted the trial deposition of Dr. Joseph Mansen, who apparently was involved in and had knowledge of events related to appellant's allegation of personal animosity on the part of Wagoner. Because we have determined that appellant's allegations regarding Wagoner were not supported by the evidence, any possible error in the court's failure to admit Mansen's deposition resulted in no prejudice to the college and was harmless. The college's assignment of error on cross-appeal is thus overruled.

Appellant's first, second and third assignments of error are overruled, and the college's assignment of error on cross-appeal is overruled, and the judgment of the Court of Claims is affirmed.

*Judgment affirmed.*

PEGGY BRYANT and REILLY, JJ., concur.

ARCHER E. REILLY, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.