OPINION
{¶ 1} The plaintiff-appellant, Thomas A. Kaczkowski ("Kaczkowski"), appeals the June 13, 2005, Judgment of the Court of Common Pleas, Hardin County, Ohio granting summary judgment for defendants-appellees, Ohio Northern University ("Ohio Northern"), the President of Ohio Northern, Dr. Kendall L. Baker ("Dr. Baker"), and the Athletic Director of Ohio Northern, Thomas Simmons ("Simmons").
 {¶ 2} In 1984, Kaczkowski became employed at Ohio Northern as an assistant football coach. He was named the head football coach in 1986. In 1987, he completed all prerequisites and was successfully promoted to the rank of Assistant Professor. In 1990, he was placed on a four-year rolling contract that was renewed at the beginning of each academic year.
 {¶ 3} In the summer of 2003, Kaczkowski was aware that voluntary throwing sessions and workouts were being conducted by some of his players. In early August 2003, Kaczkowksi and his assistant coaches began planning for the Ohio Northern football team's pre-season camp. Ohio Northern's 2003 football camp was not scheduled to begin until August 24, 2003, with players reporting to Ohio Northern on August 23, 2003.
 {¶ 4} On August 18, 2003, an unusually large number of players — perhaps as many as fifty individuals — returned to campus, five full days before the camp was permitted to begin according to NCAA rules. According to Kaczkowski, he realized the potential for both chaos and injury unless there was some organization to the "unplanned" workouts and instructed his assistants to let the players know when the weight rooms would be open and what field each group of players could use each day. On that same day, Kaczkowski admitted to stopping by the group workout session and answering players' questions and making suggestions about drills to run and/or techniques to practice.
 {¶ 5} On August 19, 2003, an NFL scout arrived at Ohio Northern seeking game films and other information regarding the senior quarterback. When the scout realized that the senior quarterback was on campus and conducting throwing sessions, he wanted to observe him. Kaczkowski escorted the scout onto the field and introduced him to the senior quarterback. During the visit on the field, Kaczkowski allegedly directed the senior quarterback on plays to make while the scout observed.
 {¶ 6} Shortly after the scout visit, Simmons, the direct supervisor of Kaczkowski, approached Kaczkowski and advised him that neither he nor his assistants should be out on the field with the players before pre-season camp officially began. The following morning, Simmons visited Kaczkowski in his office and repeated his concern about coaches being present before the pre-season camp. Simmons further indicated that he would place a memorandum in Kaczkowski's personnel file.[1] The memorandum read as follows:
Tom,
 As we discussed today, I am informing you that contact withyour players outside the NCAA-approved dates is not acceptableand I am required to enforce those dates. If this occurs again Iwill have no choice but to self-report to the NCAA.
 This note will be kept in your confidential file and will notbe shared with anyone on campus.
 {¶ 7} On August 25, 2003, Ohio Northern, with the assistance of counsel, started the process of conducting an investigation into allegations that surfaced regarding the pre-August 24, 2003 activities of Kaczkowski conducting football practices in violation of NCAA rules. Simmons met with Kaczkowski after a morning practice and ordered him to have Assistant Coach Denver Williams report to a conference room for questioning. The following day, Simmons ordered Kaczkowski to have twelve players report for interviews.
 {¶ 8} On September 3, 2003, Kaczkowski was escorted off of the football field during practice to report to Dr. Anne Lippert, the Vice-President of Academic Affairs for Ohio Northern. When he arrived in her office, he was introduced to Christopher Yost, a labor and employment attorney from Vorys, Sater, Seymore Pease, Ohio Northern's outside legal counsel, and he was asked to introduce Attorney Yost to the players. Attorney Yost announced to the team that an investigation into possible NCAA rule violations was under way, and that he would be escorting several players off the practice field to be questioned. On September 3 and 4, 2003, Attorney Yost continued his internal investigation and interviewed approximately thirty-two witnesses, including football players and assistant coaches.
 {¶ 9} On September 5, 2003, Kaczkowski was requested to report to the library to meet with Dr. Anne Lippert. At this meeting, he was informed that his resignation was being requested both as a coach and a faculty member. The following day, Kaczkowski was summoned to Dr. Anne Lippert's office where he was informed that he was placed on suspension and he was offered the opportunity to resign his employment with a severance package and a neutral reference on any subsequent job search.[2]
Kaczkowski refused the offer.
 {¶ 10} Based on the results of Ohio Northern's internal investigation, Dr. Baker allegedly initiated the proceedings to dismiss Kaczkowski pursuant to the dismissal procedure outlined in Ohio Northern's Faculty Handbook on September 6, 2003.[3] On the same day, Dr. Baker and Simmons informed the football team that Kaczkowski had committed violations of the NCAA rules and had been placed on administrative leave due to those violations. Thereafter, Dr. Baker informed the press of the same.
 {¶ 11} Kaczkowski eventually received a hearing before a five-person faculty committee of his peers. The hearing was conducted through several sessions over a period of several weeks and apparently provided both Kaczkowski and Ohio Northern an opportunity to present evidence in support of their positions and to object as necessary. The hearing apparently resulted in several hundreds of pages of transcripts, as well as a written post-hearing brief by both Appellant and Ohio Northern.[4]
In any event, after several months, the faculty committee determined that sufficient evidence existed to find just cause existed to terminate Kaczkowski's employment with Ohio Northern.[5] On May 5, 2004, Kaczkowski was notified by certified letter that the Board of Trustees had voted to dismiss him from the faculty and that his employment at Ohio Northern was thereby terminated effective May 1, 2004.[6]
 {¶ 12} By a letter dated May 10, 2004, Kaczkowski appealed his dismissal and asked to proceed directly to stage five of the grievance procedures. On May 11, 2004, Ohio Northern accepted Kaczkowski's proposal in writing and informed his counsel in writing that he had one week from May 10, 2004 in which to file a written grievance with Dr. Jonathan Smalley, the Chair of Ohio Northern's Grievance Committee. However, Kaczkowski did not submit a grievance with Dr. Smalley within the allotted seven days.
 {¶ 13} The Grievance Committee met, over a period of two days, May 19 and 20, 2004, and determined that since no written grievance was received from Kaczkowski that his time for filing had lapsed and the Grievance Committee would not accept any filing after that time. On May 24, 2004, a notice of the action of the committee was forwarded to Kaczkowski's counsel. On June 1, 2004, Dr. Baker accepted the action of the Grievance Committee, thereby marking that date as the termination of Kaczkowski.
 {¶ 14} On November 16, 2004, Kaczkowski filed a complaint in the Hardin County Common Pleas Court alleging six causes of action against Ohio Northern, Dr. Baker, and Simmons including (1) Breach of Employment Contract; (2) Intentional Interference with Employment Contract; (3) Defamation by Defendant Baker; (4) Defamation by Defendant Simmons; (5) Intentional Infliction of Emotional Distress; and (6) Age Discrimination.
 {¶ 15} On December 7, 2005, Ohio Northern, Dr. Baker, and Simmons filed a motion for an extension requesting more time to respond to the complaint. On December 15, 2005, the trial court granted the extension of time until January 13, 2005. On January 13, 2005, Ohio Northern, Dr. Baker and Simmons filed a joint motion to dismiss and/or motion for summary judgment. On February 18, 2005, Kaczkowski filed a memorandum in opposition to their joint motion to dismiss and/or motion for summary judgment. On March 1, 2005, Ohio Northern, Dr. Baker and Simmons filed a reply to Kaczkowski's opposition memorandum.
 {¶ 16} On April 1, 2005, Ohio Northern, Dr. Baker, and Simmons filed a motion to stay discovery pending the trial court's ruling on their motion to dismiss and/or motion for summary judgment. On April 11, 2005, Ohio Northern, Dr. Baker, and Simmons withdrew their motion to stay discovery and requested a 45 day extension to respond to Kaczkowski's first set of interrogatories and first request for production of documents. On May 16, 2006, the trial court on its own motion extended the response time by Ohio Northern, Dr. Baker, and Simmons to Kaczkowski's first set of interrogatories and first request for production of documents to June 17, 2005. However, on June 13, 2005, prior to the expiration of that extension, and without any discovery filed, the trial court granted summary judgment for Ohio Northern, Dr. Baker, and Simmons.
 {¶ 17} On July 8, 2005, Kaczkowski filed a notice of appeal alleging the following three assignments of error:
 First Assignment of Error THE TRIAL COURT ERRED AS A MATTER OF LAW BY DISMISSINGPLAINTIFF-APPELLANT'S BREACH OF CONTRACT CLAIM BEFOREPLAINTIFF-APPELLANT EVEN HAD A CHANCE TO CONDUCT DISCOVERY ON HISALLEGATIONS THAT DEFENDANT-APPELLEES OHIO NORTHERN UNIVERSITY HADFAILED TO ABIDE BY ITS OWN STATED PROCEDURES FOR FACULTYDISMISSAL AND HAD OTHERWISE FAILED TO OBSERVE HIS CONTRACTUAL DUEPROCESS RIGHTS.
 Second Assignment of Error THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT TODEFENDANT-APPELLEES ON PLAINTIFF-APPELLANT'S DEFAMATION,INTERFERENCE AND OTHER TORT CLAIMS WITHOUT PROVIDINGPLAINTIFF-APPELLEE ANY OPPORTUNITY TO CONDUCT DISCOVERY ON SUCHCLAIMS BECAUSE NUMEROUS ISSUES OF MATERIAL FACT EXISTED AS TOEACH CLAIM.
 Third Assignment of Error THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT ONPLAINTIFF-APPELLANT'S AGE DISCRIMINATION CLAIM UNDER R.C. 4112.01ET SEQ. WITHOUT EVEN GIVING PLAINTIFF-APPELLANT THE OPPORTUNITYTO CONDUCT DISCOVERY BECAUSE NUMEROUS ISSUES OF MATERIAL FACTEXISTED AS TO PLAINTIFF-APPELLANT'S ALLEGATIONS THAT HE WASTERMINATED FROM HIS EMPLOYMENT AT LEAST IN PART BECAUSE OF HISAGE.
 {¶ 18} In Kaczkowski's first assignment of error, he alleges that the trial court erred by dismissing his breach of contract claim before he had the chance to conduct discovery on his allegations that Ohio Northern had failed to abide by its own stated procedures for faculty dismissal and failed to observe his contractual due process rights.
 Summary Judgment Standard of Review {¶ 19} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Lorain Natl. Bank v.Saratoga Apts. (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198. Summary judgment is properly granted when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Civ.R.56(C). Summary judgment is not proper unless reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party. Id. Summary judgment should be granted with caution, with a court construing all evidence and deciding any doubt in favor of the non-moving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 360,604 N.E.2d 138.
 {¶ 20} The party moving for summary judgment bears the initial burden of identifying and providing the basis for its motion in order to allow the opposing party a "meaningful opportunity to respond." Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 526 N.E.2d 798, syllabus by the court. In addition, the moving party also bears the burden of demonstrating the absence of a genuine issue of material fact as to an essential element of the case. Dresher v. Burt (1996), 75 Ohio St.3d 280,293, 662 N.E.2d 264. Once the moving party establishes that he is entitled to summary judgment, the burden shifts to the non-moving party to produce evidence and set forth specific facts showing that there is still a genuine issue of fact for the trial. Civ.R.56(E).
 Standard of Review Applied by the Trial Court {¶ 21} In ruling on the motion for summary judgment, the Hardin County Common Pleas Court was apparently persuaded to abandon the usual requirements of Civ. R. 56, as set forth above, and instead, to follow the decision of Bleicher v. Univ. ofCincinnati Coll. of Med. (10th Dist. 1992), 78 Ohio App.3d 302,604 N.E.2d 783, which references a unique standard of review for certain contracts that may contain negotiated institutional review procedures. In Bleicher, a student brought a breach of contract action against a medical school in the Court of Claims because he had been dismissed from school for poor scholarship. The Court of Claims found that the school did not breach its contract with the student. On appeal, the court held that the school abided by its own educational guidelines and thus did not breach its implied contract with the student. Specifically, theBleicher court held that in determining whether a contract between the university and student who enrolled in that university had been breached, the trial court must defer to academic decisions of the university unless it perceives such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.
 {¶ 22} As a result, the trial court in this case determined that it was not required to review evidence and arguments that were presented at any hearings conducted by Ohio Northern; nor was it necessary to allow the parties to create an evidentiary record in the trial court via the discovery contemplated by Civ. R. 56(C) in order to determine whether there existed genuine issues of material fact. Instead, based on Bleicher, the trial court determined that it need only examine the pleadings and motions of the parties to decide whether Ohio Northern made such a substantial departure from its own internal dismissal provisions and procedures as to amount to arbitrary and capricious action.
 {¶ 23} Upon review, we do not find the Bleicher decision relevant or applicable to the case before us. Nor do we believeBleicher is appropriately applied to university cases across the board. On the contrary, Bleicher was limited to determining whether an implied contract between a university and a student who enrolled in that university had been breached, not a contract between a university and a tenured faculty member who had entered into a written contract executed by the parties.
 {¶ 24} In McConnell v. Howard Univ. (D.C. Cir. 1987),818 F.2d 58, the United States Court of Appeals overturned a summary judgment granted in favor of the university. In McConnell, a tenured university professor had a confrontation with a student who made slanderous comments in class. As a result of the confrontation, the professor asked the student to apologize and the student refused. Therefore, the professor refused to return to the classroom to teach until the student apologized or was removed from the class. However, the professor was removed from his teaching responsibilities and ultimately terminated.
 {¶ 25} The Court of Appeals in McConnell specifically held:
[T]his case is to be tried de-novo, just as with any othercontract case. In order to prevail on the merits, Dr. McConnellmust establish either that `cause' did not exist to terminate hisappointment or that the prescribed internal procedures werenot followed.
 * * *
 Dr. McConnell can also seek to establish that the proceduresused by Howard University did not comply with the contractualrequirements. This would include evidence concerning whether ornot the full report of the Grievance Committee was transmitted tothe Board of Trustees.
 McConnell, 818 F.2d at 71. Furthermore, the Court of Appeals stated that a court should not hesitate before "intruding in the administration of university affairs." Specifically, it reasoned in its analysis that:
[w]hat is at stake are the contractual rights of Dr.McConnell. However, taking the point more broadly, we do notunderstand why university affairs are more deserving of judicialdeference than the affairs of any other business or profession.Arguably, there might be matters unique to education on whichcourts are relatively ill equipped to pass judgment. However,this is true in many areas of the law, including, for example,technical, scientific and medical issues. Yet, this lack ofexpertise does not compel courts to defer to the view of one ofthe parties in such cases. The parties can supply suchspecialized knowledge through the use of expert testimony.Moreover, even if there are issues on which courts are illequipped to rule, the interpretation of a contract is not one ofthem.
 McConnell, 818 F.2d at 69. Finally, the Court of Appeals stated that:
We find no reason not to do here what courts traditionally doin adjudicating breach of contract claims: interpret the terms ofthe contract and determine whether the contract has beenbreached.
 McConnell, 818 F.2d at 70.
 {¶ 26} We find the reasoning and analysis of the United States Court of Appeals case McConnell persuasive in establishing that the trial court should use the ordinary denovo standards of Civ.R. 56 with respect to summary judgments even in the context of university affairs.
 {¶ 27} Accordingly, we believe the trial court's departure from the standards of Civ. R. 56 in favor of the Bleicher
standard was in error. Unfortunately, perhaps as a result of this error, the evidentiary record in this case was not developed in the manner necessary to properly determine a motion for summary judgment. While we do not believe the trial court specifically precluded or blocked discovery efforts as alleged by the plaintiff, the record does demonstrate that discovery was stayed and continued by the court at the defendant's request (and on the court's own motion) that the trial court did issue its ruling on the summary judgment prior to the completion of any requested discovery. We believe that this decision was also in error.
 {¶ 28} As a result of these errors, the record is significantly deficient with regard to the underlying facts and circumstances of the dismissal in this case, which we view as fundamental to any determination of summary judgment. (Ironically, many of these unanswered questions involve compliance with the University contract and its own termination procedures and thus, would seem to preclude summary judgment even under the terms of Bleicher, limited to administrative abuse of discretion.)
 {¶ 29} In any event, these unanswered questions include: (1) to what extent, if any, the letter or memorandum of reprimand placed in the coach's file by Simmons is a binding part of a progressive discipline policy which may have been violated by jumping directly to dismissal without further incident; (2) exactly which "just cause" from the list of just causes for dismissal in the university handbook is alleged and relied upon by the university for the dismissal, See Ohio Northern Faculty Handbook Section 2.7.1; (3) although the coach was apparently brought in to consult with Dr. Anne Lippert, there is no indication in the record as to whether the requisite faculty mediation committee was ever activated as specified in the handbook prior to any dismissal notice or whether any requisite recommendation of the committee to the President was made, See
Ohio Northern Faculty Handbook Section 2.7.2; (4) there is no indication in the record as to whether following the mediation efforts and committee recommendation, the requisite letter, statement or "charging document" from the University President as specified in the handbook, was issued to the coach, or if issued, what it stated, See Ohio Northern Faculty Handbook Section 2.7.2-3; (5) although there was apparently a considerable number of player interviews and/or other testimony before a faculty hearing committee over several months, supposedly relevant to the circumstances constituting the alleged "just cause" for dismissal, none of this testimony or evidence is in the record — again providing no evidentiary indication of the extent to which any violations by the coach were willful, persistent or otherwise constituted a defined "just cause" for dismissal as listed in the handbook; (6) the final decision of the faculty hearing committee, while declaring just cause for termination, neither recites any evidence, nor identifies which just cause from the listed causes in the handbook was determined by the committee,See Ohio Northern Faculty Handbook Section 2.7.10; (7) although required and specified in the handbook, a final letter of termination to be issued by the University Trustees based upon the action of the faculty committee is not in the record, See
Ohio Northern Faculty Handbook Section 2.7.12.
 {¶ 30} In sum, while summary judgment in this case could still eventually prove to be appropriate upon proper discovery and the creation of an adequate evidentiary record pursuant to the standards of Civ. R. 56, the existing record before us does not permit a fair or sound determination of such a judgment as to any of the issues raised in the complaint. Simply put, it is our conclusion that as a result of the absence of evidence in the record, neither party can properly demonstrate from the existing record the absence or presence of genuine issues of material fact at this time. Accordingly, and to this extent only, the assignments of error are sustained.
 {¶ 31} However, because additional discovery efforts were initiated but never completed in the trial court, we are not prepared to simply deduce that genuine issues of material fact must exist, reverse the judgment of the trial court, and remand for trial. On the contrary, while incomplete, the existing record gives ample indication that evidence and documentation exists in this case which if produced and entered into the record, would likely enable the trial court and/or this court to make a proper determination, one way or the other, of the summary judgment motions.
 {¶ 32} Accordingly, the trial court's order of summary judgment is vacated and the matter is remanded to the trial court for the conduct and/or completion of any new or previously requested discovery, introduction of underlying University transcripts and documents by the parties pursuant to Civ. R. 56, such as may be necessary to properly determine any currently filed or subsequently filed supplemental motions for summary judgment, or for any other proceedings consistent with this opinion.
Judgment vacated and remanded.
 Bryant, P.J., concurs.
 Rogers, J., concurs in judgment only.
[1] However, we are unaware of whether the letter or memorandum of reprimand placed in Kaczkowski's file by Simmons was a binding part of a progressive discipline policy.
[2] Pursuant to Ohio Northern Faculty Handbook Section 2.7.2, the Dean or Head Librarian is to discuss the matter of dismissal for cause with the faculty member in a personal conference. The termination may be by mutual consent; however, if it is not, then a standing or ad hoc committee of five faculty members elected by the faculty are to render confidential advice to both parties. This Court does not have the evidence before it in the record to indicate that this step in the dismissal of a faculty member was taken.
[3] Pursuant to Ohio Northern Faculty Handbook Section 2.7.2. and 2.7.3, the President of the University is to formulate a statement specifying with reasonable particularity the proposed grounds for dismissal if he/she determines that dismissal proceedings shall be undertaken. Furthermore, it states that the formal proceedings shall be initiated by a communication addressed to the faculty member from the President transmitting the statement of grounds for dismissal. This Court finds that such correspondence from the President to Kaczkowski providing a statement of the grounds for dismissal is not provided in the record.
[4] This Court finds that the hundreds of pages of transcripts and the written post-hearing briefs were not in the record of this case.
[5] Pursuant to Ohio Northern Faculty Handbook Section 2.7.10, the faculty committee is to reach a decision based on the evidence provided during the hearing and make explicit findings with respect to each grounds of removal presented and state its decision as to whether the faculty member should be dismissed. Although the faculty committee hearing report was provided to this Court, it did not provide any evidentiary indication of the extent to which any violations by Kaczkowksi were willful, persistent, or otherwise constituted a defined "just cause" for dismissal.
[6] Pursuant to Ohio Northern Faculty Handbook Section 2.7.12, the Board of Trustees shall make an announcement of the final decision and include a statement of the original action of the hearing committee. Although we are told by both parties that such a letter was received by Kaczkowski, the letter is not a part of the record before us.