[Cite as *Maxwell-Calvin v. Wright State Univ.*, 2011-Ohio-5319.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

PHOEBE MAXWELL-CALVIN

    Plaintiff

    v.

WRIGHT STATE UNIVERSITY

    Defendant       Case No. 2008-06091

Judge Alan C. Travis

DECISION

{¶1} Plaintiff brought this action alleging breach of contract, civil conspiracy, intentional and/or negligent infliction of emotional distress, and false light invasion of privacy.[1]  The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.  The court finds the following facts from the evidence presented at trial.

{¶2} In August 1998, plaintiff enrolled as a student at defendant's school of medicine.  Plaintiff was provided with a copy of the student policy guide, and was required to sign a form acknowledging that she had read pages 7-14 thereof prior to attending the "Dean's Hour" on August 19, 1998.  (Plaintiff's Exhibit B.)  On page 11 of the student policy guide, under the heading, "IMPORTANT! U.S.M.L.E." it states:  "You must pass the United States Medical Licensing Examination (USMLE) Step I before beginning Year 4 and *Step II before graduation.* * * * The USMLE Step I exam is first

---

[1]In her post-trial brief, plaintiff conceded that she did not prove her claims of civil conspiracy, intentional and/or negligent infliction of emotional distress, or false light invasion of privacy by a preponderance of the evidence.  Therefore, those claims are DISMISSED.

offered in June of Year 2. You must pass the exam within 15 months of the first offering of the completion of Year 2. By taking the June exam, you will have as many as four attempts to pass within the 15-month restriction. * * * The USMLE Step II exam is offered in August and March of Year 4. You must take the August exam if you are scheduled to graduate in June the following calendar year. * * * You must pass USMLE Step II within two years of completing Year 4 course requirements. Failure to pass within the designated time period will result in a recommendation for dismissal to the Dean by the Student Promotions Committee." (Emphasis added.)

{¶3} Plaintiff passed Step I of the USMLE on her fourth attempt. Due to the length of time it took her to pass Step I, plaintiff's expected graduation date changed from June 2002 to June 2003.

{¶4} In April 2002, the Ethical Standards Committee met to review allegations that plaintiff had plagiarized material for an assignment in her internal medicine clerkship. After a hearing on the matter, plaintiff received a grade of "F" for the clerkship, a letter was placed in her permanent academic file, and she was required to re-take the internal medicine clerkship.

{¶5} In September 2002, plaintiff took the Step II USMLE exam, but she did not pass it at that time. In March 2003, plaintiff was notified that she had been accepted as an internal medicine resident at the University of Tennessee College of Medicine (UTCM). Plaintiff's residency was to begin after her graduation.

{¶6} In April 2003, the Ethical Standards Committee met again to review allegations of plaintiff's unprofessional behavior during her second internal medicine clerkship. After a hearing, the committee concluded that plaintiff's absences and her failure to provide appropriate notification thereof constituted a lack of professionalism. As a result of those findings, the committee required plaintiff to complete one additional month of an internal medicine clerkship, placed a letter in her permanent academic file, notified her residency director that she did not meet the professional standards expected of her in the clerkship, and required her to seek professional counseling.

{¶7} On May 28, 2003, plaintiff took the Step II exam again. Even though plaintiff had neither completed her clerkship nor obtained a passing score for the Step II exam,

defendant permitted plaintiff to participate in the graduation ceremonies which were held on June 6, 2003. Plaintiff's name was listed as a graduate in the program, she was permitted to "walk" in the ceremony, and she signed her name in a book as a graduate with the notation "M.D." However, plaintiff was not awarded a diploma at the ceremony.

{¶8} On July 29, 2003, after having completed an additional month of the clerkship, plaintiff went to the Office of Admissions and Student Affairs to obtain her diploma. However, Joyce Baver, who was the administrative assistant for Paul Carlson, Ph.D., Associate Dean for Student Affairs and Admissions, informed plaintiff that before she could give plaintiff her diploma, she needed to verify that all of plaintiff's grades had been received and that there were no "holds" on her record. After Baver checked plaintiff's file, she informed plaintiff that the office had not received the results from her May 28, 2003 Step II exam. Baver telephoned the National Board of Medical Examiners (NBME) and was informed that plaintiff's scores had not been released because she owed the NBME $75. Plaintiff also spoke to a representative from the NBME while she was in the office with Baver. Plaintiff then left the office without her diploma.

{¶9} Plaintiff began her residency at UTCM in August 2003. On September 30, 2003, Dr. Carlson contacted James Lewis, Jr., M.D., the program director for internal medicine at UTCM, to notify him that plaintiff had not received a diploma and that defendant had no record of plaintiff's USMLE Step II score. On October 8, 2003, the NBME received payment from plaintiff of the $75 balance on her account. On October 15, 2003, the NBME released plaintiff's scores from the May 28, 2003 Step II exam, which showed that she had failed. On October 24, 2003, Dr. Carlson notified Dr. Lewis that plaintiff had failed the USMLE Step II exam and that she was not an M.D. Plaintiff was relieved of her duties at UTCM shortly thereafter.

{¶10} On January 22, 2004, the Ethical Standards Committee met to review the circumstances leading up to and including plaintiff's work as a physician in UTCM's internal medicine program prior to graduating from defendant's school of medicine. The allegations included that she had worked as a physician during the months of August, September, and October despite knowing that she had neither passed the Step II exam nor received her diploma; that she had falsely told Baver on July 29, 2003, that she had

received her scores from the NBME even though her scores had not been released; that she had told Dr. Lewis that she had received a passing score on the Step II exam; and that she continued working as a physician at UTCM after having received official notice from the NBME in October that she had failed the Step II exam. After a hearing, the Ethical Standards Committee recommended that plaintiff be dismissed from defendant's school of medicine. Plaintiff exhausted the appeals process which included a review of the recommendation of dismissal by the Appeals Committee, the Dean, and the Provost; however, her dismissal was upheld at every level.

{¶11} Plaintiff asserts that defendant committed a breach of contract when it dismissed her from medical school. Plaintiff contends that a successful score on Step II of the USMLE was not required for graduation and that defendant's interference in her residency in Tennessee and subsequent failure to allow her to sit for the Step II exam a third time was a breach of contract. Plaintiff argues that pursuant to the student policy guide, she was permitted to obtain a passing score on the Step II exam within two years from the date of completion of the Year 4 requirements. Plaintiff also alleges that procedural irregularities took place during the Ethical Standards Committee proceedings and that those irregularities resulted in a breach of contract.

{¶12} It is well-settled that the relationship between a college and a student who enrolls, pays tuition, and attends class is contractual in nature, and that the terms of this contractual relationship may be found in the handbook, catalog, and other guidelines supplied to students. *Bleicher v. Univ. of Cincinnati College of Med.* (1992), 78 Ohio App.3d 302, 308; *Embrey v. Central State Univ.* (Oct. 8, 1991), Franklin App. No. 90AP-1302, citing *Smith v. Ohio State Univ.* (1990), 53 Ohio Misc.2d 11, 13. In addressing an alleged breach of such contract, a trial court is required to defer to academic decisions of a college unless it is perceived that there existed "'such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.'" *Bleicher*, supra, at 308, quoting *Regents of the Univ. of Mich. v. Ewing* (1985), 474 U.S. 214, 225.

{¶13} The student policy guide states: "The Doctor of Medicine degree is granted to students who have successfully completed course and elective requirements

for Bienniums I and II, *passed USMLE Steps I and II*, and have cleared any holds with the appropriate division." (Emphasis added.) (Plaintiff's Exhibit A, page 22.)

{¶14} Plaintiff testified that when she went to Baver's office in July 2003 to obtain her diploma, it was her belief that she had received a passing score on the Step II exam, and that her diploma was being held simply because she owed the testing center $75. She further stated that she was never informed that she could not begin her residency at that time. Plaintiff stated that she was first notified that she had not passed Step II when her scores were released on October 21, 2003; that she knew she was not going to receive a diploma on June 6, 2003, because at that time she had neither completed her courses nor received a score from her Step II exam; and that she felt she had two years from completing her course work to pass the Step II exam.

{¶15} Baver testified that when plaintiff met with her in the office in July 2003, plaintiff told her that she had received her scores from the Step II exam that she had taken in May 2003. However, when Baver contacted the testing agency, she was told that no scores had been released for plaintiff from the May 2003 exam. Baver also stated that in August 2003 she began a series of attempts to contact plaintiff inasmuch as the office had yet to receive any Step II scores at that time. Baver testified that as time progressed with no response from plaintiff or scores from the testing agency, she and Dr. Carlson became concerned that plaintiff might have started her residency in Tennessee without a diploma.

{¶16} Dr. Carlson testified that a diploma was required prior to starting any medical residency and that plaintiff would have been informed of that requirement in the normal course of her medical education. Dr. Carlson stated that although the policy permits a student to take the Step II exam up to four times within two years of completing Year 4 requirements, a medical degree cannot be awarded until a student passes both Step I and II of the USMLE. Dr. Carlson further explained that although plaintiff had matched with a residency program at UTCM, he did not expect her to begin her residency there until she had secured her degree, and that it was his decision to withhold her application to take the Step II exam a third time pending a decision from the Ethics Standards Committee.

{¶17} Dr. Lewis testified that a medical degree was a prerequisite to begin any medical residency at UTCM. Dr. Lewis explained that a resident is permitted to write orders and prescriptions but that medical students are not permitted to do either. Dr. Lewis further stated that after Dr. Carlson notified him that plaintiff had, in fact, failed the Step II exam, Dr. Lewis confronted plaintiff about his concerns; however, plaintiff told Dr. Lewis that she had passed the Step II exam.

{¶18} Upon review of the evidence, the court finds that plaintiff failed to complete the requirements necessary for graduation before she began her residency at UTCM. The court finds that defendant's policy guide clearly states that a passing score on the Step II exam is required for graduation. The court further finds that plaintiff was aware of that requirement when she began her studies in 1998. Indeed, the greater weight of the evidence shows that plaintiff failed to meet the requirements to obtain her medical degree as set forth in the student policy guide before she began her residency at UTCM. Furthermore, the court finds that plaintiff told Dr. Lewis that she had passed Step II of the exam at a time after she had been notified by the testing agency that she had, in fact, failed it.

{¶19} The court further finds that there was no substantial departure from accepted academic norms as to demonstrate that Dr. Carlson, the Ethical Standards Committee, or any reviewing authority from defendant's school of medicine failed to exercise professional judgment. Inasmuch as plaintiff was practicing medicine in Tennessee without a license for approximately three months, the court cannot find that defendant's decision to dismiss her from medical school was a failure to exercise professional judgment. For the foregoing reasons, the court finds that plaintiff has failed to prove any of her claims by a preponderance of the evidence and, accordingly, judgment shall be rendered in favor of defendant.



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor

PHOEBE MAXWELL-CALVIN

    Plaintiff

    v.

WRIGHT STATE UNIVERSITY

    Defendant
Case No. 2008-06091

Judge Alan C. Travis

<u>JUDGMENT ENTRY</u>

{¶20}    This case was tried to the court on the issue of liability. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of defendant. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
ALAN C. TRAVIS
Judge

cc:

Marcus A. Ross
2740 Airport Drive, Suite 300
Columbus, Ohio 43219

Peter E. DeMarco
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

HTS/dms

Filed September 12, 2011
To S.C. reporter October 13, 2011