[Cite as *Jefferson v. Univ. of Toledo*, 2012-Ohio-3645.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

LOUIS JEFFERSON, JR.

    Plaintiff

    v.

THE UNIVERSITY OF TOLEDO

    Defendant

Case No. 2008-11818

Judge Clark B. Weaver Sr.

DECISION

{¶ 1} Plaintiff brought this action alleging breach of contract and negligence. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 2} In the fall of 2004, plaintiff matriculated in the five-year program at the Medical College of Ohio (MCO), which became known as the Medical University of Ohio at Toledo and subsequently merged with defendant, the University of Toledo. R.C. 3364.06(A). The five-year program was developed for students who desired a career in medicine and could benefit from additional science courses to increase their chances for success in medical school. The program required students to take courses that were part of MCO's physician assistant program prior to taking medical school courses. In his first year in the program, plaintiff earned grades of "C" in Gross Anatomy and Pathophysiology and a grade of "B" in Human Physiology, courses which were taught in the physician assistant program. In his medical school courses, he received grades of

"F" in both Neuroscience and Behavioral Sciences, resulting in a grade point average (GPA) below 1.5.

{¶ 3} On June 6, 2005, plaintiff appeared before the Student Promotions Committee (SPC), a panel of medical professors who convened to determine whether plaintiff should be dismissed from the school of medicine. According to the committee's report, plaintiff "presented a long discourse detailing the reasons for his poor performance," which included family concerns and employment in clinical research that required him to travel and occasionally miss lectures. (Defendant's Exhibit L.) The committee determined "that most of [plaintiff's] problems were self-inflicted"; however, the committee members "could not reach a consensus" on a recommendation to Jeffrey Gold, M.D., Dean of the School of Medicine. On July 20, 2005, Dr. Gold informed plaintiff that he was allowed to remain enrolled in the medical school for the 2005-2006 academic year with several conditions, including a one-year period of probation during which he was to improve his GPA to at least 2.5.

{¶ 4} On June 21, 2006, the SPC again reviewed plaintiff's academic record after he failed both Cellular and Molecular Biology and Neuroscience. (Defendant's Exhibits D and F.) Based upon plaintiff's lack of significant improvement in his academic record, and for his failure to meet the conditions set forth in Dr. Gold's letter, the committee voted to dismiss him from the medical program. (Defendant's Exhibit F.) Following his dismissal, plaintiff requested permission to take additional medical school courses as a "special status" student; however, his requests were denied.

{¶ 5} Plaintiff asserts that defendant committed a breach of contract when it dismissed him from medical school. Specifically, plaintiff contends that defendant improperly changed the sequence of required courses, did not permit remediation of courses he had failed, and did not allow him to take courses as a special status student. Additionally, plaintiff alleges that defendant was negligent in reporting his grades and scheduling his classes.

**{¶ 6}** It is well-settled that the relationship between a college and a student who enrolls, pays tuition, and attends class is contractual in nature, and that the terms of this contractual relationship may be found in the handbook, catalog, and other guidelines supplied to students. *Bleicher v. Univ. of Cincinnati College of Med.* (1992), 78 Ohio App.3d 302, 308; *Embrey v. Central State Univ.* (Oct. 8, 1991), Franklin App. No. 90AP-1302, citing *Smith v. Ohio State Univ.* (1990), 53 Ohio Misc.2d 11, 13. In addressing an alleged breach of such contract, a trial court is required to defer to academic decisions of a college unless it is perceived that there existed "'such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.'" *Bleicher*, supra, at 308, quoting *Regents of the Univ. of Mich. v. Ewing* (1985), 474 U.S. 214, 225.

**{¶ 7}** MCO's policy No. 04-013-03, which addresses evaluation and dismissal for students in the five-year program, provides as follows:

**{¶ 8}** "1.   A five-year student must obtain a GPA of 2.5 or better by the end of the first year of the curriculum to advance to the second year.

**{¶ 9}** "2.   A five-year student whose GPA falls between 2.4 and 1.5 by the end of the first year of the curriculum, will be placed on academic probation and will be given a one year period to improve their academic performance. During this period they must raise their GPA to at least a 2.5. Failure to do so will result in a mandatory review for possible dismissal from the School of Medicine by the Student Promotions Committee.

**{¶ 10}** "3. A five-year student with a failure in a medical school curricular block during the first year of the curriculum may be eligible to remediate this failure during the summer. In order to be considered eligible, the student must achieve a final average for the block that is no lower than 50%. If following successful remediation the student's GPA improves to a 2.5 or better, they will be permitted to advance to the second year of the five-year curriculum.

**{¶ 11}** "* * *

{¶ 12} "6. A five-year student with a GPA below 1.5 will be subject to mandatory review for possible dismissal from the School of Medicine by the Student Promotions Committee." (Plaintiff's Exhibit 23.)

{¶ 13} In addition to MCO's policies, as stated above, plaintiff's continued enrollment for the 2005-2006 academic year was contingent upon his agreement to comply with the conditions set forth in Dr. Gold's July 20, 2005 letter wherein he states:

{¶ 14} "1. You are placed on academic probation and will be given a one year period to improve your overall academic performance to an accumulative GPA of at least 2.50; failure to do so will result in mandatory review by the Medical Student Promotions Committee for possible dismissal.

{¶ 15} "2. Your appeal to attempt summer remediation of either Behavioral Sciences or Neuroscience is denied, but you are granted the opportunity to repeat the two failed College of Medicine blocks in their entirety during the 2005-2006 academic year. A repeat grade of Fail in either block will require immediate review by the Student Promotions Committee for possible dismissal.

{¶ 16} "3. You are also permitted to advance to the second year of the five-year curriculum, and, with the exception of Physician, Patient & Society I, which you have successfully passed, you must take the required blocks with no alteration in your schedule.

{¶ 17} "4. Because you withdrew from Clinical Medicine in the 2004-2005 academic year, you are required to take and complete a component of that course during the 2005-2006 academic year.

{¶ 18} "* * *

{¶ 19} "6. We expect that you will not work during the 2005-2006 academic year so that you can focus on your academic success. If you wish to appeal to participate in any employment or research, it will require my review and approval * * *." (Plaintiff's Exhibit 7.)

**{¶ 20}** As a result of plaintiff's second hearing before the SPC, the panel issued a report to the dean wherein the panel noted that plaintiff had failed to comply with several of the conditions that were specified in Dr. Gold's letter: 1) plaintiff failed Neuroscience for the second time; 2) plaintiff obtained employment as a researcher during the academic year without obtaining Dr. Gold's approval; and, 3) plaintiff did not schedule a required course in Clinical Medicine and it was "unlikely that he intended to register [during the summer] because of his work commitments." (Defendant's Exhibit F.) The panel also noted that plaintiff stated that he had both financial problems that required him to work and various health problems which affected his ability to study. However, the panel stated that plaintiff had not provided any documents regarding his health conditions other than one email concerning his vision problems. The panel was "convinced that in spite of numerous attempts to accommodate [plaintiff], he was not able to succeed in our curriculum." Carol Bennett-Clarke, Ph.D. testified that plaintiff appealed the panel's June 21, 2006 decision; however, Dr. Gold upheld the dismissal.

**{¶ 21}** Dr. Bennett-Clarke testified that she was a member of the SPC and responsible for oversight of the five-year program, including curriculum. According to Dr. Bennett-Clarke, the curriculum for the five-year program remained unchanged during the time that plaintiff was enrolled in the program. Specifically, Dr. Bennett-Clarke testified that Clinical Medicine was a required part of the curriculum and that she personally advised plaintiff that he was responsible for scheduling the course. Dr. Bennett-Clarke explained that plaintiff was not allowed to remediate his failed courses as a result of being placed on academic probation with a GPA below 1.5. Moreover, Dr. Gold's July 20, 2005 letter advised plaintiff that his request to attempt summer remediation of either Behavioral Sciences or Neuroscience had been denied in that he was allowed to repeat the failed courses during the 2005-2006 academic year, and plaintiff agreed to comply with those conditions.

{¶ 22} Regarding his attempts to register as a special status student, Dr. Bennett-Clarke explained that special status students could take medical school classes, but were not matriculated in the medical school and were not eligible to earn a medical degree. After his dismissal, plaintiff corresponded with several professors about taking a neuroscience course as a special status student, but the course professor, Richard Mooney, M.D., denied plaintiff's request to take the course "via distance learning mode." (Defendant's Exhibit O.) According to Dr. Bennett-Clarke, Dr. Mooney "had the final say" in determining who could take his course.

{¶ 23} Upon review of the evidence, the court finds that the SPC's decision to dismiss plaintiff from the medical school was made conscientiously and with careful deliberation, based upon both an evaluation of the entirety of plaintiff's academic record and consideration of plaintiff's statements regarding his health and financial problems. Plaintiff was provided an opportunity to improve his academic record after the first SPC review; however, he did not demonstrate academic improvement in that he failed two additional courses, including a repeat failure in Neuroscience. Furthermore, plaintiff failed to abide by the conditions set forth in Dr. Gold's July 20, 2005 letter inasmuch as he neither registered for a required course in Clinical Medicine nor obtained Dr. Gold's approval to work during the 2006 spring semester. The court concludes that there was no substantial departure from accepted academic norms as to demonstrate that Dr. Gold, the SPC, or any reviewing authority from defendant's school of medicine failed to exercise professional judgment.

{¶ 24} With regard to plaintiff's negligence claims, the economic loss rule provides that a plaintiff cannot sue for damages in tort where the duty owed arises out of a contract. *Bungard v. Ohio Dept. of Job and Family Servs.*, Franklin App. No. 07AP-447, 2007-Ohio-6280, ¶11, citing *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 106 Ohio St.3d 412, 2005-Ohio-5409, ¶6. Inasmuch as defendant's duty to plaintiff was purely contractual, plaintiff's negligence claims are without merit.

{¶ 25} For the foregoing reasons, the court finds that plaintiff has failed to prove any of his claims by a preponderance of the evidence and, accordingly, judgment shall be rendered in favor of defendant.



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

LOUIS JEFFERSON, JR.

    Plaintiff

    v.

THE UNIVERSITY OF TOLEDO

    Defendant

Case No. 2008-11818

Judge Clark B. Weaver Sr.

<u>JUDGMENT ENTRY</u>

{¶ 26} This case was tried to the court on the issue of liability. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of defendant. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
CLARK B. WEAVER SR.
Judge

cc:

Lafayette E. Tolliver                      Randall W. Knutti
316 North Michigan, #514                   Assistant Attorney General
Toledo, Ohio 43604                         150 East Gay Street, 18th Floor
                                           Columbus, Ohio 43215-3130

004

Filed February 17, 2012
To S.C. Reporter August 13, 2012