[Cite as *Langfan v. Carlton Gardens Co.*, 183 Ohio App.3d 260, 2009-Ohio-3318.]

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

**LANGFAN et al.,**

    **APPELLEES,**

    **v.**　　　　　　　　　　　　　　　　　**CASE NO.  8-09-06**

**CARLTON GARDENS COMPANY et al.,**

    **APPELLEES;**

　　　　　　　　　　　　　　　　　　　　**O P I N I O N**

**PATEL et al.,**

    **APPELLANTS.**

**Appeal from Logan County Common Pleas Court**
**Trial Court No. CV 06 11 0565**

**Judgment Affirmed in Part, Reversed in Part and Cause Remanded**

**Date of Decision:  July 6, 2009**

**APPEARANCES:**

    **Terrence G. Stolley, for appellee Carlton Gardens Company.**

    **William R. Montgomery, for appellants.**

    **Darrell L. Heckman, for appellant Kiran Patel, a.k.a. Ken Patel.**

**PRESTON, Presiding Judge.**

{¶1} Defendants-appellants, Upendrakamar B. Patel, also known as Ben Patel ("Ben"), and Kiran Patel, also known as Ken Patel ("Ken"), appeal the judgment of the Logan County Court of Common Pleas, rendered appealable pursuant to Civ.R. 54(B) by nunc pro tunc judgment on June 2, 2009, which found in favor of plaintiffs-appellees, Harshad Patel, also known as Harry Patel ("Harry"), Bharatibien Patel, and Jignaay, L.L.C. (collectively, "Jignaay"). For the following reasons, we affirm in part and reverse in part.

{¶2} This matter stems from a foreclosure action brought by plaintiffs Mark Langfan, Dayna Langfan, Robin Hamer, and William Langan, d.b.a. Abnet Realty (collectively, "Abnet Realty"), as mortgagee, against defendant Carlton Gardens Company ("Carlton Gardens"), as mortgagor, defendant Jignaay, as then current tenant and sub-sublessee of the real property subject to the foreclosure, defendant-appellant Ken Patel, as lessee, and defendant-appellant Ben Patel, as sublessee. The mortgage covered property that contained both a motel business and a restaurant business. The leases in question on this appeal concern only the motel portion of the property.

{¶3} The motel property was originally leased by Carlton Gardens to Ken on December 10, 1993 ("master lease"). The master lease was for a term of ten

years, which commenced on December 11, 1993, and also contained an option to extend the term of the lease for an additional ten years. This option was exercised in December 2003, which extended the term of the master lease to December 10, 2013. Under the terms of this lease, Ken was to make rental payments directly to Abnet Realty.

{¶4} On July 15, 1998, Ken subleased the motel property to Ben and assigned all of his rights and obligations under the master lease, with the exception of his obligation to pay the lease payments to the mortgagee. Subsequently, in May 2005, Ben and Ken entered into a lease agreement with Jignaay that expressly incorporated the terms of the master lease. Ken also assigned all of his rights and obligations under the master lease to Jignaay, with the exception of his obligation to make rental payments. In addition, Jignaay was to make rental payments to Ben.

{¶5} In February 2002, the mortgage on the property became delinquent, and a foreclosure complaint was filed on November 27, 2006, which was amended on June 26, 2007, to include Jignaay, Ken, and Ben as defendants. Jignaay filed cross-claims against Ken and Ben alleging various claims for relief, including breach of contract. Ben filed a cross-claim against Ken based on breach of contract and indemnification. The cross-claims were bifurcated from the foreclosure action. The foreclosure action was tried, resolved in favor of Abnet

Realty, and the real estate was sold back to Abnet Realty at a sheriff's sale on June 25, 2008.

{¶6} The cross-claims were tried on December 30, 2008, and on January 13, 2009, the trial court found in favor of Jignaay against Ken and Ben based on breach of contract, awarded damages in the amount of $78,220.00, plus interest and costs, and found Ken and Ben jointly and severally liable for the amount of damages.

{¶7} Ken and Ben now appeal, with Ben raising three assignments of error and Ken raising one assignment of error for our review.

### BEN'S ASSIGNMENT OF ERROR NO. I

The court erred in concluding that because the mortgage was in default, therefore the lease was also in default and that such required appellant under the lease to give notice of default to appellee.

### BEN'S ASSIGNMENT OF ERROR NO. II

The court erred in failing to find that any damages suffered by appellee resulted from appellee's failure to continue making lease payments under the terms of its lease and voluntarily abandoning the premises.

### BEN'S ASSIGNMENT OF ERROR NO. III

The court erred in failing to rule on the cross-claim of appellant Ben Patel against appellee Ken Patel and in not finding in favor of the appellant on said cross-claim.

### KEN'S ASSIGNMENT OF ERROR NO. I

The trial court erred in finding that appellant breached a contract proximately causing damage to appellee.

**{¶8}** Overall, both parties claim that the trial court erred in finding that a breach of contract occurred and thereby awarding Jignaay damages.

**{¶9}** Leases are considered contracts, and as such should be interpreted with reference to contract principles. *United States Corr. Corp. v. Ohio Dept. of Indus. Relations* (1995), 73 Ohio St.3d 210, 216, 652 N.E.2d 766; *Stine v. Northwest Ohio Realty Co.* (Mar. 16, 1989), 3d Dist. No. 8-86-24, at *3. The construction and interpretation of contracts are matters of law. *Latina v. Woodpath Dev. Co.* (1991), 57 Ohio St.3d 212, 214, 567 N.E.2d 262. An appellate court applies a de novo standard of review to questions of law and may interpret the language of the contract, substituting its interpretation for that of the trial court. *Bryan Publishing Co. v. Kuser*, 3d Dist. No. 7-07-17, 2008-Ohio-2610, ¶ 16, citing *Saunders v. Mortensen*, 101 Ohio St.3d 86, 2004-Ohio-24, 801 N.E.2d 452, ¶ 9.

*Ben's first assignment of error*

**{¶10}** In Ben's first assignment of error, he argues that the trial court erred in concluding that because the mortgage was in default, the lease was also in default, and as such, Ben and Ken were required to give Jignaay notice. While Ben acknowledges that the trial court's ruling is unclear, he claims that it appears that the trial court found a breach of contract either because of a failure to give

5

notice or because the mortgage had been in default.  We disagree with Ben's interpretation of the trial court's judgment entry.

**{¶11}**  In its judgment entry, the trial court stated:

This cause of action centers around a motel at 308 North Main Street, Bellefontaine, Ohio known as the Mountain Top Inn.  A restaurant was located on the same premise.  In 1993 the fee holder of the premise, Carlton Garden, entered into a ten-year lease with one option to renew for ten years with Ken Patel.  The lease commenced on December 11, 1993. * * * According to paragraph seventeen of said lease the lease survives any foreclosure of a mortgage and the lessees would not be named as a party to any foreclosure action.  In 1998 Ken Patel subleased this premise to Ben Patel * * *.  Subsequently in 2005, commencing on May 7 of that year, Ben Patel subleased the premise to Harry Patel dba Jignaay LLC.  The option of the additional ten years had been exercised in December of 2003 so the master lease was extended to December 11, 2013.

The testimony of cross-claimant Harry Patel was that he paid Ben Patel $135,000 to purchase the motel; that is to take over his interest in the lease and operate it through the expiration of the same.  That would mean that Harry Patel doing business as Jignaay LLC had the right to operate the motel from May 7, 2005 to December 11, 2013 or approximately one hundred three months.  Under the terms of the lease, paragraph seventeen provided for a notice of default from the lessors to the lessee.  After said notice, the sublease provided for a ten-day cure period.  The parties stipulated that the Jignaay defendants were never provided any notice of default, verbal or written of the sub sublease between Jignaay LLC and Defendants Ken and Ben Patel.  Therefore, the Court finds that the lease was in full force and effect when the amended foreclosure was filed in June 26, 2007 naming the Jignaay defendants and Harry Patel as parties.

On March 27, 2008 a judgment entry/decree of foreclosure was granted by this Court ordering the property sold.  A final appealable order endorsement was placed beneath the signature of the Court and the Clerk appears to have provided notice of said final judgment to

all parties not in default. The Court overruled Harry Patel's [Civ.R.] 60B motion to set aside the judgment and the property was sold at sheriff's sale on June 25, 2008 and the entry of confirmation was filed August 19, 2008.

The Court finds as a matter of contract that Harry Patel and the Jignaay defendants did not get what they bargained for. They paid $135,000 for the right to run the Mountain Top Inn for one hundred three months paying rent in the amount of $3,100 per month. This rent was paid regularly with the exception of December 2006 up through April or May 2007 depending upon whether one follows the stipulation or Harry's testimony. Nevertheless, the default procedure to cancel the lease was never activated and the lease remains in effect.

What then are the damages suffered by the Jignaay defendants? They paid for the right to rent the motel for one hundred three months; in fact, they occupied the same from May 2005 through July of 2008 or thirty-eight months. At the $135,000 price, they paid $1,310.00 per month for one hundred three months for said right. They received thirty-eight months or $49,780. That amount deduced from the $135,000 leaves a damage of $85,220. In addition, the Court finds that the $500 due under the terms to Ken Patel was not paid for thirteen months equaling $6,500. Crediting that to the amount that Ken and Ben owe jointly, the Court concludes that the damages are $78,220.

{¶12} There is nothing in the trial court's judgment entry that leads us to conclude that it found a breach of contract because Ben and Ken failed to give Jignaay notice of the defaulted mortgage or because of the fact that the mortgage was in default. The trial court's statements regarding notice of default only determined that the terms of the master lease were still in effect because there had not been any notice of default given to Jignaay, not that the failure to give Jignaay notice of the defaulted mortgage had amounted to a breach. Rather, the trial court

7

found that there was a breach of contract because "Harry Patel and the Jignaay defendants did not get what they bargained for. They paid $135,000 for the right to run the Mountain Top Inn for one hundred three months paying rent in the amount of $3,100 per month," but only received 38 months of its bargain. Because we cannot conclude that the trial court found a breach of contract occurred because of a failure to give notice of the defaulted mortgage or because of the fact that the mortgage had been in default, we find Ben's arguments under his first assignment of error are meritless.

{¶13} Ben's first assignment of error is therefore overruled.

*Ben's second assignment of error*

{¶14} In his second assignment of error, Ben argues that the trial court erred by failing to find Jignaay's damages resulted from his failure to continue paying his rent and by voluntarily abandoning the premises. Specifically, Ben claims that under the terms of the master lease, Jignaay still had the right to continue its business and stay on the property even in the event of a foreclosure. Under the master lease, Ben argues that as long as Jignaay continued to pay its rent, it could not have been evicted; however, because Jignaay voluntarily abandoned the property, he waived any rights he may have had with respect to the property and now is estopped from suing Ben and Ken for damages.

{¶15} Jignaay responds by arguing that the trial court did not err. With respect to Ben's argument that Jignaay voluntarily abandoned the property or waived its right to assert a breach of contract claim, Jignaay argues that it did oppose the pending foreclosure action and did not vacate the premise until after the issuance of a sheriff's deed following the sale of the property. In support of its position, Jignaay cites the following passage:

> An action to sell the mortgaged property is called a "foreclosure" because, through judicial process, it will foreclose or cut off the rights in the property of all parties to the action. That includes the mortgagor, the mortgagee, subsequent holders of title, junior lienholders, and all other claimants whose claims or interests in the property attached subsequent to the mortgage.

*Hembree v. Mid-Am. Fed. S. & L.* (1989), 64 Ohio App.3d 144, 152, 580 N.E.2d 1103.

{¶16} Essentially, Jignaay claims that there were two breaches of contract in this case, which are both contained within the language of the sub-sublease and its incorporation of the language of the master lease. First, with respect to the master lease, Jignaay points to paragraph 17, which states, "nor shall [Jignaay] be named as a party defendant to any foreclosure of the lien," and argues that because Jignaay was named as a party defendant, Ben and Ken breached its contract. Second, Jignaay claims that it paid Ken and Ben a total of $135,000 for the right to operate the motel business, which was separate and in addition to its obligation to pay rent. Because Jignaay was named as a defendant in the foreclosure action, in

violation of paragraph 17 of the master lease, Ken and Ben thereby interfered with its right to operate the motel business from May 2005 through December 10, 2013.

**{¶17}** First of all, with respect to Jignaay's argument that there was a breach based on the violation of paragraph 17 in the master lease, we do not believe that this was the basis for the trial court's ruling. Even though the trial court acknowledged the fact that paragraph 17 contained the language that the lessee shall not be named as a party defendant in a foreclosure action, later in its opinion it specifically found that there was a breach because "Harry Patel and the Jignaay defendants did not get what they bargained for. They paid $135,000 for the right to run the Mountain Top Inn for one hundred three months paying rent in the amount of $3,100 per month." It is clear that naming Jignaay as a party defendant in the foreclosure action was not a basis for the trial court's breach of contract finding; rather, it was the fact that Jignaay allegedly lost its right to operate the motel for the contracted time that was the basis for the trial court's finding of a breach.

**{¶18}** Even still, the fact that Jignaay was named as a party defendant in the foreclosure action does not justify a finding that a breach of contract occurred. As stated above, contract principles apply when construing and interpreting lease provisions. *JC & F Invests. v. Housholder*, 3d Dist. No. 17-08-11, 2008-Ohio-5313, ¶ 12, quoting *United Mobile Homes v. Bollinger* (Nov. 21, 1997), 3d Dist.

10

No. 9-97-51, citing *Myers v. E. Ohio Gas Co.* (1977), 51 Ohio St.2d 121, 125, 364 N.E.2d 1369; *Downtown Assoc., Ltd. v. Burrows Bros. Co.* (1986), 34 Ohio App.3d 296, 297, 518 N.E.2d 564. Therefore, when reviewing the lease provisions in this case, we are to presume that the intent of the parties is in the language they used, and if the contract is clear and unambiguous, then we must follow the contract's expressed terms and must not go beyond the plain language of the contract. *Housholder*, 2008-Ohio-5313, at ¶ 12, quoting *Bollinger*, 3d Dist. No. 9-97-57, citing *Buckeye Union Ins. Co. v. Consol. Stores Corp.* (1990), 68 Ohio App.3d 19, 24, 587 N.E.2d 391; *First Natl. Bank of Cincinnati v. Cianelli* (1991), 73 Ohio App.3d 781, 785, 598 N.E.2d 789. In addition, when determining the parties' intent, a court must read the contract as a whole and give effect, if possible, to every provision contained in the contract. *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.* (1997), 78 Ohio St.3d 353, 678 N.E.2d 519.

{¶19} Here, in its appellate brief, Jignaay cited the following language in paragraph 17 of the master lease for justifying a finding of a breach of contract: "nor shall [Jignaay] be named as a party defendant to any foreclosure of the lien." Based on this language, because Jignaay was named as a party defendant in the foreclosure action with Abnet Realty, Jignaay claims Ben and Ken clearly breached its contract. We disagree.

11

{¶20} Jignaay has isolated only one portion of paragraph 17 in the master lease. In its entirety, paragraph 17 states:

The LESSEE agrees that upon the request of the LESSOR(S), and subject to the conditions hereinafter contained to subordinate its right hereunder to the lien of any mortgage, deed or trust, or other encumbrance, together with any renewals, extensions or replacements thereof, now or hereafter placed, charged or enforced against the premises, or any buildings or improvements included thereon, or any portion or portions thereof. Provided, however, that if this Lease or any renewal of it is in full force and effect and there are no defaults thereunder on the part of the LESSEE, the right of possession by the LESSEE to the leased premises and the LESSEE's rights arising out of this Lease shall be protected and not affected or disturbed by the LESSOR(S), the mortgagee or the trustee in the exercise of any of the mortgagee's or trustee's rights under the mortgage or the deed of trust, nor shall the LESSEE be named as a party defendant to any foreclosure of the lien of such encumbrance nor in any way be deprived of its right under this Lease or any renewal thereof. In the event that any mortgagee or trustee, or any other person, acquires title to the leased premises, or any buildings or improvements included thereon, pursuant to the exercise of any remedy provided for in the mortgage or deed of trust, this Lease and any renewal thereof shall survive, and shall not be terminated or affected by said foreclosure or sale or any such proceedings, and the mortgagee, the trustee and the LESSOR(S) for and on behalf of said mortgagee and trustee agree that any sale of the premises, or the said of any [sic] buildings or improvements included thereon, pursuant to the exercise of any rights or remedies under the mortgage or deed of trust, or otherwise shall be made subject to this Lease and any renewal thereof and the rights of the LESSEE hereunder. The parties hereto agree to execute or obtain the execution of such reasonable documents as may be necessary to effectuate such subordination.

{¶21} When reviewing this particular paragraph as a whole, it is clear that the intent of the parties was to provide protection or a defense to a lessee in the

event that there was ever a dispute challenging the lessee's rights to the property. This provision was not a promise by the other leaseholders (Ben and Ken) in which they guaranteed that Jignaay's rights would never be disturbed. Instead, it was a promise that Jignaay's rights would survive or be protected in the event of a disturbance, as long as the lease was in effect and the lease payments were being made.

{¶22} In fact, the party who did make the promise not to name Jignaay as a party defendant in a foreclosure action was the mortgagee, Abnet Realty, who had been a party to the master lease, which had been specifically incorporated into the terms of the sub-sublease between Ben, Ken, and Jignaay. Therefore, if there was any alleged breach of this paragraph, it was by Abnet Realty, who had promised not to name the lessee as a party defendant. At the very least, when Jignaay was named as a party defendant in the foreclosure action, Jignaay should have raised this particular portion of the paragraph as a defense against Abnet Realty in its foreclosure action. Nevertheless, as this provision specifically relates to Ben and Ken, it is clear that the mere naming of Jignaay as a party defendant in the foreclosure action was not a legal basis for finding a breach of contract.

{¶23} As to Jignaay's second argument pertaining to its right to operate the business, we believe that this was the actual basis for the trial court's finding that a breach of contract had occurred. This is clear from its language that stated:

> Harry Patel and the Jignaay defendants did not get what they bargained for. They paid $135,000 for the right to run the Mountain Top Inn for one hundred three months paying rent in the amount of $3,100 per month. * * * They paid for the right to rent the motel for one hundred three months; in fact, they occupied the same from May 2005 through July of 2008 or thirty-eight months. At the $135,000 price, they paid $1,310.00 per month for one hundred three months for said right. They received thirty-eight months or $49,780.

Nevertheless, we believe that the trial court erred when it found that Ben and Ken had breached the contract with Jignaay on the basis that Jignaay had not received the benefit of its bargain.

{¶24} At the outset, we note that while interpreting lease agreements involves a de novo standard of review, when determining whether the trial court's findings of fact were correct, the manifest-weight standard of review is used. In determining whether a judgment is against the manifest weight of the evidence, we cannot substitute our judgment for that of the trial court when there exists competent, credible evidence going to all the essential elements of a case. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 280, 376 N.E.2d 578. The trial court is in a better position to observe the demeanor of the witnesses, examine the evidence, and weigh the credibility of the testimony and evidence. *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273.

{¶25} Here, the trial court found that Ben and Ken had breached their contract with Jignaay with respect to its right to operate the motel business for 103

14

months. To set forth a claim for breach of contract, a complaining party must prove the following elements by a preponderance of the evidence: (1) a contract existed, (2) the complaining party fulfilled its contractual obligations, (3) the opposing party failed to fulfill its obligations, and (4) the complaining party incurred damages as a result of this failure. *Farmers State Bank v. Followay,* 9th Dist. No. 07CA0011, 2007-Ohio-6399, ¶ 13, citing *Lawrence v. Lorain Cty. Community College* (1998), 127 Ohio App.3d 546, 548-549, 713 N.E.2d 478.

{¶26} It is clear from the record that two contracts existed between Ken and Ben and Jignaay: (1) the sub-sublease agreement, and (2) the agreement to purchase the motel business. Under the sub-sublease, Ken assigned all of his rights and obligations in the master lease, with the exception of his obligation to make rent payments, to Jignaay. Moreover, the terms of the master lease were expressly incorporated into the sub-sublease. In addition to leasing the property, Jignaay paid $135,000 in total for the right to operate the motel business through the terms of the master lease, as extended pursuant to the option until December 10, 2013. Specifically, Jignaay paid $125,000 to Ben and $10,000 to Ken. All three parties signed the sub-sublease. Therefore, we find that there was competent, credible evidence to show that a contract did exist between the parties.

{¶27} However, we do not believe that there was competent, credible evidence to show that Ken and Ben failed to perform under the contract, and in

fact, we find that there was evidence to show that it was Jignaay who failed to perform under the contract. It is undisputed that the mortgage in question became delinquent in February 2002, that Jignaay had no knowledge of the underlying default when it had signed the sub-sublease, and that Jignaay was never provided any notice of the default prior to the foreclosure proceedings. Harry testified that he eventually learned of the foreclosure proceedings sometime in December 2006 or January 2007. Subsequently, Abnet Realty added Jignaay, Ken, and Ben as defendants to the foreclosure proceedings on June 26, 2007. Abnet Realty filed a motion for summary judgment, and Jignaay filed a motion in opposition. However, the trial court found that none of Jignaay's arguments asserted any claims against Abnet Realty or claimed any superior interest in the property; therefore, the trial court entered a default judgment in favor of Abnet Realty and ordered the property be sold at a sheriff's sale. The property was eventually sold at a sheriff's sale to the mortgagee, Abnet Realty, on June 25, 2008, and while Harry testified that he had been operating the motel throughout the foreclosure proceedings, he said that after the sheriff's sale he moved out of the motel on July 5, 2008.

{¶28} Even though Jignaay left the property after it was sold at the sheriff's sale, there is no evidence that Jignaay's right to operate the motel was being interfered with, or in other words, there is nothing in the record that

16

demonstrates that Jignaay had been evicted or that it was even going to be evicted in the near future. In fact, even though Harry testified that in light of the property being foreclosed upon he did not believe he was able to use it, he admitted that he was never evicted from the property by Abnet Realty.

{¶29} While there is no evidence in the record to support a finding that Jignaay's right to operate its business was breached by Ken or Ben, there is evidence in the record that suggests Jignaay failed to perform its obligations under the contract. The parties stipulated that Jignaay last paid its rental payments on the motel property in April 2007, after the foreclosure proceedings had been commenced. Although Harry testified that he had stopped paying rent in May 2007, not April, the fact remains that he stopped paying rent and performing his obligation under the terms of the lease agreement before anyone had interfered with his contractual rights. See *Adaranijo v. Morris Invest. Co.*, 1st Dist. No. C-070453, 2008-Ohio-2705, ¶ 9 (finding that the lease agreement had been unaffected when the tenant failed to give adequate notice that complied with the terms of the lease, thus the tenant's failure to pay rent was a material breach of the lease agreement and tenant was not entitled to a return of the deposit).

{¶30} Jignaay argues that according to the general rule regarding foreclosures and subordinate property rights, the sale of the foreclosed property automatically terminated his rights under the property. See *Hembree v. Mid-Am.*

17

*Fed. S. & L.* (1989), 64 Ohio App.3d 144, 152, 580 N.E.2d 1103. Even if this statement is true, a "rental agreement may include any terms which are not inconsistent with or prohibited by law * * * or against public policy." *New Towne L.P. v. Pier 1 Imports (U.S.), Inc.* (1996), 113 Ohio App.3d 104, 108, 680 N.E.2d 644, citing *Tillimon v. Dukes* (Aug. 28, 1992), 6th Dist. No. L-91-343 (finding that a lease agreement that had negated a landlord's duty to mitigate damages did not violate public policy). Although it is unusual, here the parties had contracted around this particular situation and created a protection or defense to the lessees, so long as they made their rent payments. Thus, under the terms of the master lease, which was incorporated into the sub-sublease, Jignaay's rights to the property were protected even in the event of a foreclosure, and there is nothing in the record that shows that this right was disturbed in any way.

{¶31} Moreover, we find it dispositive that Jignaay voluntarily abandoned the property once the property had been sold to Abnet Realty at the sheriff's sale. Jignaay never raised anticipatory breach as one of its theories against Ken or Ben in its cross-claim. If it had raised this theory, the trial court may have found that leaving the motel property was reasonable under the circumstances. Nevertheless, based on the record, there was not competent, credible evidence to show that a breach had occurred since there was no evidence that Jignaay was or was going to be evicted or forced off the property, and thus there was not competent, credible

evidence to have justified Jignaay abandoning the property. See *Gen. Dev. Corp. v. Wilbur-Rogers Atlanta Corp.* (1971), 28 Ohio App.2d 35, 36, 273 N.E.2d 908 (finding that there was not such a constructive breach of the terms of the lease as to give the lessee the right to vacate the property and to be relieved from further payment of rent).

{¶32} Because we find that the trial court erred in finding that Ben breached his contract with Jignaay, we find it unnecessary to address his arguments pertaining to Jignaay's damages.

{¶33} Ben's second assignment of error is, therefore, sustained.

*Ben's third assignment of error*

{¶34} In his third assignment of error, Ben argues that the trial court erred by not ruling on his cross-claim against Ken. In particular, Ben claims that if Jignaay's breach-of-contract claim stands and Jignaay is entitled to damages, then because Ken was Ben's lessor, Ken should have to indemnify any damages Ben must pay to Jignaay.

{¶35} For a cause to be justiciable there must "exist a real controversy presenting issues which are ripe for judicial resolution and which will have a direct and immediate impact on the parties." *State ex rel. Keller v. Columbus,* 10th Dist. No. 05AP-52, 164 Ohio App.3d 648, 2005-Ohio-6500, ¶ 19, quoting *Eagle Fireworks, Inc. v. Ohio Dept. of Commerce,* 4th Dist. No. 03CA28, 2004-

Ohio-509. A claim based upon a future event that may or may not occur is not ripe for review. Id. at ¶ 20. See also *Cuthbert Greenhouse, Inc. v. Steele*, 3d Dist. No. 14-05-47, 2006-Ohio-6920, ¶ 10.

{¶36} Here, Ben filed a cross-claim on November 20, 2007, alleging breach of contract, indemnification, fraud, negligence, breach of warranty, and breach of duty against Ken.[1] Subsequently, the trial court bifurcated all "cross-claims" from the foreclosure action on March 27, 2008, and set them for trial on a later date. A trial was held on December 30, 2008, but in its final judgment entry, while the trial court ruled on all of Jignaay's remaining causes of action, it failed to rule on any of Ben's causes of action against Ken. Thus, Ben's cross-claim against Ken is still pending and his third assignment of error concerning his cross-claim against Ken is not ripe for our review.

{¶37} Therefore, Ben's third assignment of error is overruled.

*Ken's assignment of error*

{¶38} In Ken's assignment of error, he argues that the trial court erred in finding that he breached his contract with Jignaay and was thereby liable for Jignaay's damages. In particular, Ken claims that there was never any breach because Jignaay was protected from a foreclosure under the terms of the master

---

[1] In Ben's original cross-claim, Harry's name appeared in the caption; however, Ben filed an amended cross-claim on November 28, 2007, that changed the name in the caption from Harry to Ken.

lease, there was no evidence that Jignaay was evicted or would have been evicted in light of the foreclosure, and Jignaay made no effort to mitigate its alleged damages.

{¶39} For the same reasons stated above in Ben's second assignment of error, we find that the trial court also erred when it found Ken liable for breach of contract against Jignaay.

{¶40} Ken's assignment of error is, therefore, sustained.

{¶41} Having found no error prejudicial to appellant Ben in the particulars assigned and argued in appellant Ben's first and third assignments of error, we affirm the trial court's judgment. However, having found error prejudicial to appellants Ben and Ken in appellant Ben's second assignment of error and appellant Ken's sole assignment of error, we reverse the trial court's judgment and remand the matter for further proceedings consistent with this opinion.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

WILLAMOWSKI and ROGERS, JJ., concur.