[Cite as *Shaw v. Marion Laborers Local 574*, 2014-Ohio-3672.]

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

DUANE M. SHAW,

    PLAINTIFF-APPELLEE,

    v.                               CASE NO.  9-13-31

GARY BRETZ, ET AL.,

    DEFENDANT-APPELLEE,
    -and-

MARION LABORERS' LOCAL
#574 OF THE LABORERS'             O P I N I O N
INTERNATIONAL UNION OF
NORTH AMERICA,

    DEFENDANT-APPELLANT.

**Appeal from Marion County Common Pleas Court**
**Trial Court No. 11-CV-0395**

**Judgment Affirmed**

**Date of Decision:   August 25, 2014**

APPEARANCES:

    *Joshua M. Hughes and Thomas P. Timmers* for Appellant

    *James R. Gucker*  for Appellee Shaw

Case No. 9-13-31

**WILLAMOWSKI, P.J.**

{¶1} Defendant-appellant Marion Laborers' Local 574 of the Laborers' International Union of North America ("Local 574" or "the Union") brings this appeal from the judgment of the Common Pleas Court in Marion County, Ohio, denying its motion to dismiss and its alternative motion for reconsideration of the court's prior grant of summary judgment in favor of Plaintiff-appellee Duane M. Shaw ("Shaw"). For the reasons that follow, we affirm the trial court's judgment.

*Factual Background*

{¶2} The parties do not dispute most of the facts that led to this litigation. Shaw was the business manager of Local 574 during the years 1994-2010. Business manager was an elected position, served in three-year terms. Shaw's last term in office ran from June 2007 to June 2010. He sought election for the next three-year term of June 2010-June 2013, but he lost to Gary Bretz. Shaw remained in office until June 13 or 14,[1] 2010. This case concerns Shaw's salary for the last two weeks in office and his severance pay.

{¶3} The compensation scheme for the position of business manager at Local 574 changed every three years. The changes were initiated by the Executive Board of Local 574, which made recommendations for the compensation to be paid to its officers and the business manager during their terms of office. (Shaw

---

[1] Both dates appear in the record. (*See, e.g.*, R. at 58, Def.'s Reply at 6 (admitting that Shaw's term in office ended on June 14, 2010); App't Br. at 3 ("Shaw remained in office from the date of the election until June 13.")) For the purpose of consistency, we use date June 14, 2010, in this opinion, without giving it any legal effect.

Dep. at 40:14-18.) The recommendations were put into writing and Local 574's members then voted to approve them. (*Id.* at 34-35.) This process took place every three years prior to the elections for the following term. (*Id.* at 35:17-22; Altvater Dep. at 8:2-3.)

{¶4} As a result of this process, in 2007, the executive board issued a document entitled "Recommendations of the Executive Board for Compensation of Officers for the Term of June, 2007 to June, 2010." (R. at 13, Ex. A.) This document provided that the business manager was to be "compensated at the rate of $1,800 per week effective June 1, 2007 and adjusted by 4% on June 1 each consecutive year, 2008, & 2009." (*Id.*) These recommendations also provided for "Severance pay of one (1) weeks' pay at current rate for each year served as an officer in any capacity of Local Union." (*Id.*)

{¶5} In 2010, a new document was issued. The "Recommendation of the Executive Board for Compensation of Officers for the Term of June, 2010 to June, 2013" provided that the business manager was "to be compensated at the rate of $1,350.00 per week effective June 1, 2010 and adjusted by 3% on June 1 of each consecutive year in 2011 and 2012." (R. at 41, Ex. 3.) These 2010 recommendations were silent as to severance pay. Thus, the recommendations issued in 2010 reduced the amount of weekly compensation for the business manager and eliminated the Union's practice of providing severance pay. The 2010 recommendations were approved by the executive Board and the

membership. After the 2010 recommendations were issued, Shaw changed the date in the statement "to be compensated at the rate of $1,350.00 per week effective *June 1, 2010*" to "effective June 14, 2010." (Shaw Dep. at 90:1-13, 93:3-21; R. at 41, Ex. 4.) He explained that he had made the correction because June 14 was the date when his term would expire and the new compensation package was for the new business manager, rather than for the prior administration. (Shaw Dep. at 90:1-13, 93:3-21.)

**{¶6}** The past practice with respect to payment of the severance pay consisted of Shaw, as the business manager, requesting the executive board to approve severance pay for a particular person. Upon the board's approval, Shaw's secretary wrote a severance check, which was then signed by Shaw and Local 574's president. (*Id.* at 55:9-20.) According to Shaw, the board had never rejected a request for approval of severance pay. (*Id.* at 56:12-18.)

**{¶7}** Local 574's executive board met on May 10, 2010, and set the election date for June 6, 2010. (*See* R. at 13, Ex., Executive Board meeting notes May 10, 2010; *see also* Shaw Dep. at 61:23-62:23.) During that meeting, Shaw moved to approve severance pay for secretary Renae Hill, as well as for Russell Jeffrey and Rick French. (*Id.*) The motions passed. (*Id.*) Shaw did not ask for approval of a severance package for himself. (*See* Shaw Dep. at 93:22-95:5.) At that point, he did not know who was going to win the elections for the business manager and whether he was going to remain in office. (*Id.* at 94:4-7.) Although

the board discussed that "whoever didn't get the business manager would receive a severance package also" (Jeffrey Dep. at 8:23-25; 16:20-24; *accord* Shaw Dep. at 94:20-24), neither the board nor the membership authorized or approved the payment of severance to Shaw. (R. at 58, Ex. 1, Bretz Aff. at ¶¶ 34, 40.)

{¶8} The elections of 2010 took place on June 6, 2010. (*See* R. at 13, Ex., Executive Board meeting notes May 10, 2010; *see also* Shaw Dep. at 23:17-21, 27:9-12.) "The officers elected would take office at the next Executive Board meeting following the election." (R. at 65, J. Entry at 3; *accord* R. at 50, Ex. D.) Before the new members took office, Shaw issued severance checks to Russell Jeffrey and Rick French, whose severance pay was approved by the executive board. (Shaw Dep. at 66-67.) He also issued a severance check to himself, because he had been told that the issue of severance package for him did not have to go through the executive board. (*Id.* at 66-67, 93:22-95:5.) The severance check to Shaw was approved by John Billi, Local 574's International Auditor. (R. at 60, Def.'s Resp. Pl.'s Req. Admis.) All three checks bore signatures of Shaw and Local 574's President, Jeff Sparks. (Shaw Dep. at 66:17-22.) Other people in Local 574 were aware of the fact that Shaw was receiving the severance check, including Ryan Hymore and Ms. Hill, the secretary for Local 574. (*Id.* at 98:24-99:7.) Local 574 and Gary Bretz were later informed that John Billi had approved the severance check issued to Shaw. (R. at 60, Def's Resp. Pl.'s Req. Admis.; Bretz Dep. at 46:8-20.)

**{¶9}** On June 14, 2010, Gary Bretz officially took office for the term of June 2010 to June 2013. (R. at 58, Ex. 1, Bretz Aff., ¶ 5.) Subsequently, Local 574 stopped the payment on Shaw's severance check and accused him of tampering with records "in order to increase the salary of the office [he] previously held" with Local 574. (*See* R. at 13, Ex. C, D; R. at 1, Compl. ¶ 25-26; R. at 58, Ex. 1, Bretz Aff.)

*Relevant Procedural History*

**{¶10}** On June 13, 2011, Shaw filed his complaint with the trial court, alleging breach of contract against Local 574 and tortious interference with contract against Gary Bretz and three John Does. (R. at 1, Compl; R. at 13, Am. Compl.) Shaw subsequently dismissed his tortious interference with contract claim and proceeded only on his claim against Local 574 for breach of contract. (*See* R. at 18.) On December 16, 2011, Local 574 filed a motion to dismiss for lack of subject matter jurisdiction, citing preemption pursuant to *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) ("*Garmon* preemption"). (R. at 22.) Local 574 argued that the *Garmon* preemption "protects the exclusive jurisdiction of the National Labor Relations Board" and prohibits the trial court from reviewing the issues alleged by Shaw, which are "internal union matters." (R. at 22.) The trial court denied Local 574's motion to dismiss because "it did not seem to the [court] that the subject matter of the complaint involve[d] a labor union representation matter

or the National Labor Relations Act." (R. at 31.) Following this judgment entry, Local 574 filed its answer to Shaw's complaint, denying the allegations of breach of contract. (R. at 33.)

{¶11} In the meantime, Local 574 filed a separate suit, which was assigned case number 2011 CV 0716, and alleged three causes of action against Shaw, "pursuant to O.R.C. 2307.61(A)." (*See* Compl. filed on Oct. 7, 2011, in case 2011 CV 0716.) Count I alleged theft of office equipment and "the various tools, in violation of R.C. 2913.02(A); Count II alleged tampering with records "to indicate that [Shaw] was entitled to receive severance pay," in violation of R.C. 2913.42(A)(1); Count III alleged tampering with records to alter the "Recommendations of the Executive Board for Compensation of Officers for the Term of June 2010 to June 2013," in violation of R.C. 2913.42(A)(1). (*Id.*) On January 3, 2012, Local 574 filed a motion in the instant case, requesting that the trial court consolidate it with the case 2011 CV 0716, suggesting that "Local 574's complaint can be substituted as counterclaims in Shaw's Lawsuit." (R. at 26.) The cases were consolidated and further pleadings continued in the current case only, with Local 574's claims against Shaw treated as counterclaims to Shaw's complaint. (*See* 2011 CV 0716, Order on Pl.'s Mot. Consolidate; *see, e.g.*, R. at 41; R. at 50; R. at 65, fn. 1.)

{¶12} On February 1, 2013, Local 574 filed a motion for partial summary judgment, requesting that the trial court rule in its favor on Shaw's claim for

breach of contract as well as Local 574's claims for tampering with records. (R. at 41.) Shaw filed "objection" to Local 574's motion for summary judgment, which was followed by Shaw's motion for summary judgment in his favor on his claim for breach of contract and on Local 574's counterclaims for tampering with records. (R. at 50, 55.)

{¶13} On April 29, 2013, the trial court issued its judgment, ruling on both summary judgment motions. The trial court denied Local 574's motion and granted Shaw's motion, entitling him to a judgment against Local 574 for his severance pay. (R. at 65.) With this conclusion, the trial court dismissed Counts II and III of the case 2011 CV 716, which were Local 574's claims against Shaw concerning "severance pay and compensation rate." (R. at 65 at 9.) The trial court held that "Local 574 cannot prevail on their second and third causes of action for tampering of the records since Plaintiff was entitled to severance pay and compensation which he attempted to collect." (*Id.* at 8.) Local 574's claim for theft in count I remained pending. (*Id.* at 9.)

{¶14} Following the trial court's grant of summary judgment, Local 574 again moved for dismissal of Shaw's claim for severance pay. (R. at 71.) Local 574 argued that the trial court lacked subject matter jurisdiction over the claim because it was a labor agreement "under Section 301 of the Labor-Management Relations Act" and as such, it was not filed within the applicable statute of limitations, and that Shaw failed to exhaust all internal remedies prior to filing his

claims. (*Id.*) In the alternative, Local 574 requested that the trial court reconsider its summary judgment ruling. (*Id.*) On May 22, 2013, Local 574 dismissed case 2011 CV 716 "and the remaining claim for theft of Count 1." (R. at 72.)

{¶15} On June 12, 2013, the trial court denied Local 574's motion to dismiss for lack of subject matter jurisdiction and the alternative motion for reconsideration. (R. at 75.) Local 574 filed this timely appeal, raising six assignments of error for our review:

**(1) The Trial Court erred in granting Plaintiff's Motion for Summary Judgment and denying Defendant's Motion for Partial Summary Judgment.**

**(2) Because the Plaintiff's claim relied upon a Union Constitution, the claim was preempted by § 301 of the Labor Management Relations Act.**

**(3) The Trial Court erred in finding that Plaintiff had a vested interest in severance pay when that benefit was, pursuant to the Union's Constitution, subject to change at any time during Plaintiff's tenure in office.**

**(4) The Trial Court erred in awarding severance pay to Plaintiff when that benefit did not vest during Plaintiff's employment with Defendant – Plaintiff's continued employment under the new contract bound him to the terms of the 2010 employment contract.**

**(5) The Trial Court erred in relying on extrinsic evidence to extend the length of Plaintiff's 2007 employment contract when the contract was clear and unambiguous on its face.**

**(6) The Trial Court erred in finding that Plaintiff's unauthorized altering of the 2010 contract to postpone its effective date did not constitute Tampering with Records.**

{¶16} We group the six assignments according to the issues that they present. The third, fourth, and fifth assignments of error challenge the trial court's grant of summary judgment in favor of Shaw on his claim for breach of contract. We address them first. The sixth assignment of error challenges the trial court's grant of summary judgment in favor of Shaw on Local 574's claims of tampering with records. We address this issue second. The first assignment of error is a more general statement combining the challenges raised in the assignments of error three through six. By addressing the assignments of error three through six, we effectively resolve the question presented in the first assignment of error. Finally, the second assignment of error challenges the trial court's denial of Local 574's motion to dismiss for lack of subject matter jurisdiction. We address this issue last. Because the parties agree that the performance under the recommendations results in a contract, we sometimes use the term "contract" when referring to the recommendations.

### *Assignments of Error (3), (4), and (5)—Breach of Contract for Severance Pay*[2]

{¶17} Local 574 claims that the summary judgment in favor of Shaw on his claim for breach of contract was not proper. An appellate court reviews a trial court's decision on a motion for summary judgment de novo. *Kaczkowski v. Ohio N. Univ.*, 3d Dist. Hardin No. 6-05-08, 2006-Ohio-2373, ¶ 16.

---

[2] This section of our opinion does not discuss Shaw's right to the increased salary, as Shaw's claim for breach of contract and the assignments of error (3)-(5) only concern severance pay.

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

Civ.R. 56. "[B]ecause summary judgment is a procedural device to terminate litigation, it must be awarded with caution." *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 359, 604 N.E.2d 138 (1992). The court must thus construe all evidence and resolve all doubts in favor of the non-moving party, here Local 574. *Id.* But if the evidence so construed fails to support the essentials of its claim, summary judgment is proper. *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346, 617 N.E.2d 1129 (1993).

{¶18} The party moving for summary judgment has the initial burden "to inform the trial court of the basis for the motion, identifying the portions of the record, including the pleadings and discovery, which demonstrate the absence of a genuine issue of material fact." *Reinbolt v. Gloor*, 146 Ohio App.3d 661, 664, 767 N.E.2d 1197 (3d Dist.2001). The burden then shifts to the party opposing the summary judgment. *Id.* In order to defeat summary judgment, the nonmoving party may not rely on mere denials but "must set forth specific facts showing that

there is a genuine issue for trial." *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 10, quoting Civ.R. 56(E).

**{¶19}** To satisfy a claim for breach of contract, Shaw had to prove that (1) a contract existed; (2) Shaw fulfilled his contractual obligations; (3) Local 574 failed to fulfill its obligations; and (4) Shaw incurred damages as a result of this failure. *Langfan v. Carlton Gardens Co.*, 183 Ohio App.3d 260, 2009-Ohio-3318, 916 N.E.2d 1079, ¶ 25 (3d. Dist.). Upon Shaw satisfying his burden of proof on this issue, in order to defeat summary judgment, Local 574 would have to allege sufficient facts to show a genuine issue for trial by contradicting one of the above elements or by showing a defense to the breach of contract claim.

**{¶20}** The parties do not dispute the first element above; they agree that they had an employment contract. Likewise, they agree that Shaw served as the business manager from 1994 until 2010, thus fulfilling his contractual obligation. It is the third element of the breach of contract claim that is disputed here because of the parties' disagreement regarding what Local 574's obligations were. Shaw relies on the 2007 recommendations and claims that Local 574 was obligated to provide him with severance pay but failed to do so.

**{¶21}** Local 574 asserts, however, that the 2007 recommendations expired on May 31, 2010. According to Local 574's reasoning, the 2010 recommendations replaced Shaw's 2007 contract and the 2007 contract is no longer enforceable. Since the 2010 recommendations did not offer severance pay,

Local 574 was not obligated to provide it to Shaw and no breach of contract occurred. Of note, Local 574 agrees that the 2007 contract is enforceable with respect to people who left their employment prior to June 1, 2010. Therefore, Local 574 suggests that if Shaw had left employment on May 31, 2010, he would have been entitled to severance pay. (*See* R. at 58, Def.'s Reply Mem. at 7.) Local 574 contends that by staying in the business manager's position between June 1 and June 14, 2010, Shaw accepted the 2010 recommendations, forbearing his rights to compensation under the 2007 recommendations.

**{¶22}** The dispute thus concerns the question of which recommendations governed Shaw's employment between June 1, 2010, and June 14, 2010. In order to answer this question we first look at the two contracts themselves to ascertain whether they guide the resolution of the dispute. In reviewing the contracts, we apply the rules of contract interpretation, which require us to give effect to the intent of the parties as it is " 'presumed to reside in the language they chose to employ in the agreement.' " *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361, 678 N.E.2d 519 (1997), quoting *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 509 N.E.2d 411 (1987), paragraph one of the syllabus. "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Id.*, quoting *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241,

374 N.E.2d 146 (1978), paragraph two of the syllabus. "[W]here the intent of the parties to a contract is evident from the clear and unambiguous language used, a court must not read into the contract a meaning not contemplated or placed there by an act of the parties to the contract." *Reinbolt*, 146 Ohio App.3d at 664. Ambiguity exists only when the contract or its terms are susceptible of more than one *reasonable* interpretation. *Hacker v. Dickman*, 75 Ohio St.3d 118, 119-20, 661 N.E.2d 1005 (1996). Where the terms of a written document are not ambiguous, then its interpretation is a question of law, which is subject to a de novo review on appeal. *State ex rel. Parsons v. Fleming*, 68 Ohio St.3d 509, 511, 628 N.E.2d 1377 (1994).

{¶23} We start with interpreting the 2007 employment contract. Looking at the plain language of the 2007 recommendations, which govern "compensation of officers *for the term of June, 2007 to June, 2010*," Local 574 was contractually obligated to pay Shaw "Severance pay of one (1) weeks' pay at current rate for each year served as an officer in any capacity of Local Union." (Emphasis added.) (R. at 13, Ex. A.) There is nothing in the 2007 recommendations indicating that they are to expire prior to the end of the 2007-2010 term. Rather, by stating that they govern compensation of officers "for the term of June, 2007 to June, 2010," they clearly expire *at the end* of the 2007-2010 term.

{¶24} Local 574 agrees that the 2007 recommendations were "clear and unambiguous" on their face. (*See* Assignment of Error 5.) Nonetheless, we

recognize that the recommendations do not specify on what day in June 2010, the 2007-2010 term ends and the new term begins, thus potentially justifying looking into extrinsic evidence in order to determine a definition for the term's expiration.[3] It is unnecessary to look into extrinsic evidence in this situation, however, because Local 574 agrees that Shaw was not elected or sworn in for the June 2010-June 2013 term. Thus, he could not have served on the 2010-2013 term and therefore, the only reasonable conclusion is that Shaw ended his service at the end of the 2007-2010 term.

{¶25} This conclusion is supported by the evidence that was before the trial court. Local 574's current business manager, Gary Bretz, testified that Shaw was "still the business manager" until June 14, 2010, and that the 2007 recommendations constituted "a compensation package for that term." (Bretz Dep. at 28:16-21.) Local 574 in their Reply in Support of its Motion for Partial Summary Judgment provides, "The evidence is clear—Shaw's *term* ended on June 14, 2010." (Emphasis added.) (R. at 58, at 6.) Robert Richardson, Regional Vice-President and Director for the Laborers International Union of North America 905 in Washington DC confirmed that Shaw's term as business manager expired when his successor was sworn into office. (R. at 62, Ex., Richardson Aff.)

---

[3] For example, the Union's Constitution seems to indicate that the term of office ends at the next executive board meeting following the elections. (*See* R. at 50, Ex. B*; see also* R. at 58, Def's Reply at 3 (conceding that the Constitution "identifies when Shaw's term ended").)

- 15 -

{¶26} Accordingly, even without defining the exact dates of a "term" in office, the contract between the parties does not include an ambiguity that would preclude summary judgment in this case. *See Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108, 652 N.E.2d 684 (1995) ("The mere absence of a definition in an insurance contract does not make the meaning of the term ambiguous."). And the plain reading of the 2007 document establishes that the 2007 recommendations governed Shaw's compensation during his last two weeks in office.

{¶27} We arrive at the same conclusion when we look at the 2010 recommendations. Nothing in the 2010 recommendations states that they rescind, modify, or replace the 2007 recommendations. The 2010 recommendations lack any indication that they are to apply to the officers serving on the 2007-2010 term. On the contrary, they are very clear that they only apply to the "compensation of officers *for the Term of June, 2010 to June, 2013*." (Emphasis added.) The conclusion is simple, because Shaw never served on the 2010-2013 term, the 2010 recommendations do not apply to him. Thus, even if Shaw's stay with Local 574 after June 1, 2010, somehow could result in him accepting the terms of the 2010 recommendations, those terms would not apply retroactively to his service as a business manager during the 2007-2010 term, which, according to undisputed testimony, lasted until June 14, 2010. In short, the 2010 recommendations have no effect on the interpretation of the 2007 recommendations.

{¶28} The testimony of Local 574's employees also confirms our conclusion that the 2010 recommendations determined the compensation package for the 2010-2013 term, rather than the 2007-2010 term. Linda Altvater, who was an office manager of Local 574 for over twenty-five years, testified that the executive board usually "set things for the following term * * * for the next three years," during their May meetings. (Altvater Dep. at 8:2-7.) Gary Bretz testified that Shaw was "still the business manager" until June 14, 2010 and that the 2007 recommendations constituted "a compensation package for that term." (Bretz Dep. at 28:16-21.)

{¶29} Local 574 relies on the words "effective June 1, 2010," included in the 2010 recommendations, to argue that the 2010 recommendations became effective on June 1, 2010, and by this term, they somehow cancelled Local 574's obligations under the 2007 recommendations. Local 574's reliance on these words is misplaced and taken out of context. When put in context, these words have no effect on the question of when the recommendations became operative, or on the obligations under the 2007 contract. The text of the recommendations states as follows:

RECOMMENDATION OF THE EXECUTIVE BOARD FOR COMPENSATION OF OFFICERS *FOR THE TERM OF JUNE, 2010 TO JUNE, 2013*.

The Business Manager/Secretary-Treasurer/Delegate is to be compensated at the rate of $1,350 per week *effective June 1, 2010*

and adjusted by 3% on June 1 of each consecutive year in 2011 and 2012.

* *

(Emphasis added.) (R. at 41, Ex. 3.)  By their plain reading, the words "effective June 1, 2010," do not refer to the effective date of the recommendations.  Rather, they provide an effective date for the recommended compensation change,[4] which does not necessarily mean that Local 574 could change compensation rights retroactively.

{¶30} Additionally, the trial court found that the 2010 recommendations were not approved by the general membership until June 6, 2010.  (R. at 65, at 7.) Therefore, prior to June 6, 2010, the changes in the compensation "were only recommendations" and had no binding force.  (*Id.*)  Local 574 does not dispute this factual finding of the trial court.[5]  In light of this fact, an argument that the 2010 recommendations were effective on June 1, 2010, prior to their actual formal issuance, has no merit.  The 2010 recommendations could not have been effective on June 1, 2010, and Shaw could not have accepted the new contract prior to it being offered to him.

---

[4] This statement does not affect the question of whether Shaw was entitled to the increased salary under the 2007 recommendations.  This question is not addressed by this assignment of error.  While our conclusion that Shaw served under the 2007 recommendations until the end of his term supports the trial court's finding that his salary for the 2007-2010 had vested and the compensation change could not have affected him retroactively, we are not reviewing the salary here.  See fn. 2.

[5] Even if this finding were disputed, our remaining analysis sufficiently supports the grant of summary judgment in favor of Shaw on breach of contract.

{¶31} We also note that the language "effective June 1, 2010," does not create an ambiguity that would preclude summary judgment. Our decision here is based on the fact that Shaw's employment during the entire 2007-2010 term was governed by the 2007 recommendations. The language from the 2010 recommendations has no effect on our interpretation of the plain meaning of the 2007 contract.

{¶32} Based upon the foregoing, Local 574's argument that Shaw's "continued employment under the new contract bound him to the terms of the 2010 employment contract," contained in its fourth assignment of error is overruled.

{¶33} Local 574's remaining arguments are unavailing as well. Local 574 contends that Shaw's interest in severance pay was subject to change at any time pursuant to the Union's Constitution. (*See* Assignment of Error 7 and App't Br. at 8.) Local 574 quotes Article IX, Section 5 of the Uniform Local Constitution, which states:

> When the income to the Local Union reduces to a point where such income cannot properly take care of the financial obligations of the Local Union, including salaries and compensation to officers, officials and personnel, the Local Union may vote to take such action as is necessary, commensurate with the reduced income, including reduction in salaries or compensation of officers, officials and personnel; when the contemplated action is to reduce salaries or compensation of officers and elected officials, such reduction shall be voted upon by the membership at a meeting of the Local Union only after written notice is given to all of the members in good standing, of the proposal and the meeting at which such proposal

shall be voted upon, or the membership approves such reduction at two consecutive meetings.

(App't Br. at 8.)

**{¶34}** At no point prior to this litigation had there been any assertion that Shaw's compensation was being changed pursuant to this provision of the Local 574's Constitution. Local 574 did not refer to this provision of the Constitution in its motion for partial summary judgment, although it attempted to assert this argument in the motion to reconsider. (*See* R. at 71, at 4.) Furthermore, the above-quoted provision outlines specific procedures that must be followed when the compensation is changed pursuant to Article IX, Section 5. These would include some proof that (1) the income to the Local Union is reduced to a certain specified point "where such income cannot properly take care of the financial obligations of the Local Union"; (2) "written notice is given to all of the members in good standing, of the proposal and the meeting at which such proposal shall be voted upon, or the membership approves such reduction at two consecutive meetings." (*Id.*) There were no assertions or evidence presented to the trial court that any such procedures were followed. Therefore, Local 574 cannot rely on Article IX, Section 5 of its Constitution in its argument on appeal. It follows that its third assignment of error, which asserted that Shaw's interest in severance pay was subject to change pursuant to the Constitution, is overruled.

**{¶35}** Local 574 also attempts to invalidate the trial court's judgment claiming that the trial court relied on extrinsic evidence "to extend the length of Plaintiff's 2007 employment contract when the contract was clear and unambiguous on its face." (Assignment of Error 5.) As we explained above, extrinsic evidence was not required to determine that Shaw's 2007 employment contract lasted until the end of his term. Contrary to Local 574's assertion, the trial court did not extend Shaw's 2007 employment contract because, according to the undisputed testimony of Shaw, Gary Bretz, and Robert Richardson, and according to the admission by Local 574, Shaw's term in office did not end until June 14, 2010. No other contract governed Shaw's relationship with Local 574 during the 2007-2010 term.

**{¶36}** While the trial court made a finding consistent with the Constitution that "[t]he officers elected would take office at the next Executive Board meeting following the election" (R. at 65, J. Entry at 3), it did not rely on this finding in its conclusion. Rather, the trial court found that Shaw's compensation package was contained within the 2007 recommendations and "Local 574 had no right to change the terms of his compensation during his three-year term in office." (*Id.* at 7.) Therefore, Local 574's assertion that the trial court relied on extrinsic evidence is unsubstantiated. Further, in our de novo review of the issue we hold that the plain language of the two contracts supports the conclusion that Shaw's compensation throughout his entire term (until June 14, 2010), was governed by

the 2007 recommendations. Accordingly, even if the trial court had relied on the extrinsic evidence, such error would have been harmless and so, Local 574's fifth assignment of error is overruled.

{¶37} In order to defeat summary judgment on Shaw's breach of contract claim, Local 574 was required to allege specific facts showing that there was a genuine issue for trial. *See Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 10, quoting Civ.R. 56(E). The only specific fact that Local 574 presented to support its argument that the 2007 recommendations were no longer enforceable, was its assertion that by the words "effective June 1, 2010" on the 2010 recommendations, the 2007 employment contract with Shaw was terminated. That argument is incorrect. The plain meaning of the two documents contradicts Local 574's arguments against summary judgment. Local 574 has failed to present any other legal theory under which it would be discharged from its obligation to provide the severance pay to Shaw.

{¶38} Shaw proved by undisputed evidence that he was entitled to the severance pay and that Local 574 did not disburse the severance pay to him, thus failing to fulfill its contractual obligation. Because Local 574 has failed to set forth specific facts showing that there is a genuine issue for trial, we agree with the trial court that Shaw is entitled to judgment as a matter of law in his favor on his

claim for breach of contract. We affirm the summary judgment on Shaw's claim for breach of contract.[6]

### *Assignment of Error (6)—Tampering with Records*

{¶39} The sixth assignment of error challenges the trial court's grant of summary judgment in favor of Shaw on Local 574's claims of tampering with records. We first note that tampering with records is a criminal, rather than civil, cause of action, pursuant to R.C. 2913.42. "Criminal violations are brought not in the name of the individual party but rather by, and on behalf of, the state of Ohio or its subdivisions." *Cook v. Criminger*, 9th Dist. Summit No. 22313, 2005-Ohio-1949, ¶ 15, quoting *Biomedical Innovations, Inc. v. McLaughlin*, 103 Ohio App.3d 122, 126, 658 N.E.2d 1084 (10th Dist.1995). Therefore, it would not be appropriate for Local 574 "to bring claims for civil damages premised upon alleged violations of criminal statutes." *Id.*

{¶40} What requires clarification is the fact that the original complaint filed by Local 574 in case 2011 CV 0716, stated that Local 574's action was brought pursuant to R.C. 2307.61(A). That section of the Revised Code allows for a recovery of "damages from any person who willfully damages the owner's property or who commits a theft offense, as defined in section 2913.01 of the

---

[6] While we affirm the trial court's finding that Local 574 was obligated to pay Shaw the severance money under the 2007 recommendations, we express no opinion on the consequences of Shaw's action of issuing the check to himself without going through the customary process of requesting approval of the severance pay from the executive board. This issue is not before us and it has no effect on the interpretation of the plain language of the 2007 recommendations.

Revised Code, involving the owner's property." R.C. 2307.61(A). Because R.C. 2913.01(K)(1) includes tampering with records in its definition of "theft offense," Local 574 attempted to use R.C. 2307.61 to bring a private cause of action for damages resulting from tampering with records, a "tort action," as defined by R.C. 2307.60(B)(1)(a), rather than a private cause of action for tampering with records. This clarification is absent from the trial court's judgment dismissing causes of action for tampering with records. We find it necessary to explain the difference here to make clear that the trial court did not rule on a criminal cause of action.

{¶41} Of note, R.C. 2307.61, in and of itself, does not authorize a civil action. R.C. 2307.61 merely states what damages may be recovered "*[i]f a property owner brings a civil action pursuant to division (A) of section 2307.60* of the Revised Code." (Emphasis added) R.C. 2307.61(A). The actual section authorizing a civil action is R.C. 2307.60, which states:

> (A)(1) Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or under the common law of this state, and may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the Revised Code.

R.C. 2307.60. While we acknowledge that R.C. 2307.61(A) provides for civil damages to victims of crimes, it does not create a private cause of action for tampering with records. Neither does R.C. 2307.60, authorize a civil claim for

tampering with records. The statute allows for "a civil action" for damages *resulting from* the crime. R.C. 2307.60.

**{¶42}** Of note, no criminal conviction is required to recover civil damages under R.C. 2307.61. "In a civil action to recover damages for willful property damage or for a theft offense, the trier of fact may determine that * * * a theft offense involving the owner's property has been committed, *whether or not any person has pleaded guilty to or has been convicted of* any criminal offense." (Emphasis added.) R.C. 2307.61(G)(1).

**{¶43}** Local 574 never brought a civil action pursuant to the proper section of the Revised Code. It appears that Local 574 mislabeled the section under which it was bringing its claim for civil damages resulting from the alleged criminal act, using R.C. 2307.61, which authorizes recovery instead of R.C. 2307.60, which authorizes the action. The difference is essential, because the language of R.C 2307.60 directs the resolution of this claim.

**{¶44}** The trial court reviewed Local 574's allegations of tampering with records and concluded that since Shaw was entitled to severance pay and the increased salary, "Local 574 cannot prevail on their second and third causes of action for tampering of the records." (R. at 65, at 8.) While the statement that Local 574 cannot satisfy the elements of tampering with records is not necessarily

correct,[7] we affirm the trial court's judgment dismissing Local 574's counterclaims for civil damages resulting from the alleged tampering with records. We hold, however, that the proper inquiry under R.C. 2307.60(A) is whether Local 574 suffered damages as a result of Shaw's allegedly criminal act.

{¶45} The first words of R.C. 2307.60(A) authorize a civil action by "[a]nyone *injured* in person or property by a criminal act." (Emphasis added.) According to Local 574, the criminal act by which it was allegedly injured was theft that Shaw committed through tampering with records. The only damage to Local 574 was alleged to be the loss of money as a result of Shaw receiving the increased salary and the severance check (which was not honored). No evidence or allegations of any other harm to Local 574 was provided to the trial court. Because the 2010 recommendations had no effect on Shaw's compensation, the altering of the 2010 recommendations did not result in Local 574 having to pay the increased salary and the severance check. Local 574 did not allege that it was otherwise "injured in person or property" as a result of Shaw's allegedly criminal act of altering the 2010 recommendations. *See* R.C. 2307.60(A).

---

[7] The finding that Shaw was entitled to the money does not necessarily preclude the finding that he tampered with records. The elements of tampering with records require proof that that Shaw (1) falsified, destroyed, removed, concealed, altered, defaced, or mutilated any writing, computer software, data, or record; (2) and he did it either knowing that he had no privilege to do so and with a purpose to defraud, or knowing that he was facilitating a fraud. R.C. 2913.42. Shaw admitted that he had altered the 2010 recommendations. The mere fact that he was entitled to severance pay (or to increased salary) does not necessarily preclude a finding that he had a purpose to defraud or knew that he was facilitating a fraud when he altered the 2010 recommendations.

{¶46} We conclude that Local 574 has failed to show specific facts to support a claim that it was injured by Shaw's allegedly criminal act, as required under R.C. 2307.60. Therefore, we hold that the trial court's dismissal of the civil causes of action for damages resulting from the alleged tampering with records was proper. Accordingly, we overrule Local 574's sixth assignment of error, challenging the trial court's decision to dismiss the causes of action for damages resulting from tampering with records.

### *Assignment of Error (1)—Grant of Summary Judgment on Shaw's Claim for Breach of Contract and Denial of Summary Judgment on Local 574's Claims for Tampering with Records*

{¶47} The first assignment of error is a more general statement combining the challenges raised in the assignments of error three through six. By holding above that the trial court's judgments with respect to Shaw's breach of contract claim and Local 574's claims for tampering with records were proper, we overrule the first assignment of error.

### *Assignment of Error (2)—Denial of Local 574's Motion to Dismiss for Lack of Subject Matter Jurisdiction*

{¶48} In the second assignment of error, Local 574 asserts that "[b]ecause the Plaintiff's claim relied upon a Union Constitution, the claim was preempted by § 301 of the Labor Management Relations Act," and therefore it should have been dismissed for lack of subject matter jurisdiction. (App't Br. at vi, 6-7.) Shaw's complaint did not rely on, or refer to, the Union's Constitution. Further, as we

explained above in the section analyzing Shaw's claim for breach of contract, reference to Local 574's Constitution was not required in order to resolve the claim.

{¶49} Since Shaw's claim did not "rely upon a Union Constitution," the underlying premise of Local 574's argument fails. We thus overrule the second assignment of error and affirm the trial court's denial of Local 574's motion to dismiss.

*Conclusion*

{¶50} Having reviewed the arguments, the briefs, and the record in this case, we find no error prejudicial to Appellant in the particulars assigned and argued. The judgment of the Common Pleas Court in Marion County, Ohio, is therefore affirmed.

*Judgment Affirmed*

**ROGERS and PRESTON, J.J., concur.**

**/jlr**